DENISE E. WOOLDRIDGE *vs.* STEVEN C. HICKEY.

No. 97-P-0551.

Franklin. June 3, 1998. - October 13, 1998.

Present: KASS, SPINA, & BECK, JJ.

*Abuse Prevention. Moot Question. Practice, Civil,* Moot case, Record.

A person against whom an abuse prevention order has issued may challenge the lawfulness of the order even after it has expired, inasmuch as the person may continue to be adversely affected by entry of the order in the Commonwealth's criminal records system. [638]

A person challenging the lawfulness of protective orders issued against him did not carry his burden of demonstrating that the record of proceedings did not support the issuance of two orders directing him to stay away from his former wife; however, there was no evidence in the record to support the issuance of an order directing him to stay away from their children, and that order was vacated. [641-642]

CIVIL ACTIONS commenced in the Franklin Division of the Probate and Family Court Department on September 4, 1996.

The cases were heard by *David M. Fuller,* J.

*Joanne I. DeLong* for the defendant.

KASS, J. On the ground that the record is devoid of any evidence of abuse in the statutory (G. L. c. 209A) sense, Stephen Hickey appeals from abuse prevention orders issued against him by a Probate Court judge. Although the record induces concern that, notwithstanding an absence of evidence of abuse, the judge may have acceded to the use of c. 209A orders as a bargaining chip in connection with pending proceedings for modification of a divorce judgment, Hickey has left a crucial gap in the record that causes us to leave the main order undisturbed. The appeal is properly before us under *Zullo* v. *Goguen,* 423 Mass. 679, 682 (1996), and an order of a single justice allowing late filing of a notice of appeal.

1. *Circumstances of the c. 209A orders.* Under a divorce judgment that issued some years before the proceedings now

under review, Wooldridge and Hickey had joint legal custody of their three children and Hickey had physical custody of them. Before she applied for an abuse prevention order, Wooldridge had filed a complaint for modification of the divorce judgment.[1] Although that judgment had placed physical custody of the children with Hickey, the children had, apparently, come to spend more time with their mother, Wooldridge, than their father, Hickey. Disputes about responsibility and financial obligations continued to roil between Wooldridge and Hickey. Following Wooldridge's application for a c. 209A order, the judge issued three sets of orders: *first*, on September 4, 1996, he issued ex parte orders directing Hickey to stay away from Wooldridge and, somewhat anomalously, from the three children of whom he had physical custody and joint legal custody; *second*, an order issued September 12, after hearing, that extended the abuse prevention order requiring Hickey to stay away from Wooldridge until November 26; *third*, on that latter date, the judge extended the order for an additional six months.

2. *Mootness.* Although the abuse prevention orders have expired, Hickey's appeal is not moot. Entries of the orders against Hickey have now been made in the Commonwealth's criminal records system, and Hickey could be adversely affected by them in the event of future applications for an order under G. L. c. 209A or in bail proceedings. *Frizado v. Frizado*, 420 Mass. 592, 593-594 (1995). Hickey has a surviving interest in establishing that the orders were not lawfully issued, thereby, to a limited extent, removing a stigma from his name and record. Section 7, third par., of G. L. c. 209A provides that whenever an abuse prevention order is vacated, the court shall direct the appropriate law enforcement agency to destroy all record of the vacated order. See *Smith v. Joyce*, 421 Mass. 520, 521 (1995). As to the limited nature of that destruction (it does not extend to expunging records from the Statewide domestic violence record-keeping system created by St. 1992, c. 188, § 7), see *Vaccaro v. Vaccaro*, 425 Mass. 153, 155-159 (1997). Contrast *Wotan v. Kegan*, 428 Mass. 1003 (1998).

3. *Evidence of abuse.* For purposes of obtaining a protective order under G. L. c. 209A, abuse means: "(a) attempting to cause or causing physical harm; (b) placing another in fear of

---

[1] The record contains neither the judgment of divorce nor the complaint for modification. We know of the existence of those documents from testimony during the c. 209A hearings but know few of their details.

imminent serious physical harm; (c) causing another to engage involuntarily in sexual relations by force, threat or duress." G. L. c. 209A, § 1, as appearing in St. 1990, c. 403, § 2. Generalized apprehension, nervousness, feeling aggravated or hassled, i.e., psychological distress from vexing but nonphysical intercourse, when there is no threat of imminent serious physical harm, does not rise to the level of fear of imminent serious physical harm. *Larkin* v. *Ayer Div. of the Dist. Court Dept.*, 425 Mass. 1020 (1997). The judge must focus on whether serious physical harm is imminent and should not issue a c. 209A order on the theory that it will do no harm, i.e., "seems to be a good idea or because it will not cause the defendant any real inconvenience." *Smith* v. *Joyce*, 421 Mass. at 523 n.1.

In the transcript of the proceedings in the Probate Court, Wooldridge never speaks of having suffered physical harm; of being in fear of imminent serious physical harm; or of having been caused through force to engage in unwanted sexual relations.[2] In the main, what Wooldridge had to say to the judge was that there seemed to be no reasonable negotiating with her former husband and that she could not stand arguing with him. She thought a protective order would level the field in the forthcoming custody and support discussion — obviously not an appropriate criterion for issuance of an abuse prevention order. During the ex parte hearing, in particular, Wooldridge spoke only of Hickey having been "abusive" and "verbally abusive." There was no questioning that explored what she meant by that. The following excerpt from the transcript of the second hearing (following the ex parte one) conveys the flavor of her testimony on that occasion:

> THE COURT: "Right, but why does that cause you to feel that you need a restraining order to be in force? Are you getting hate mail from him or you just —"

[2]Counsel for Hickey did not include the transcript of the proceedings in the Probate Court in the record appendix. Abuse prevention orders and their review on appeal are civil in nature, not criminal. Transcript of proceedings in the trial court does not automatically come before us.. An appellate court is free to disregard argument based on transcript not furnished to the court. *Kunen* v. *First Agric. Natl. Bank*, 6 Mass. App. Ct. 684, 689 (1978). *Arch Med. Assocs., Inc.* v. *Bartlett Health Enterprises, Inc.*, 32 Mass. App. Ct. 404, 406 (1992). As matter of discretion, we sent on our own motion to the register of probate in Franklin County, who furnished us with a copy of the transcript, but under the cases cited, we were not bound so to do.

Ms. WOOLDRIDGE: "No, (inaudible) — I couldn't get what I needed from the divorce (inaudible) because there's no negotiations (inaudible)."

THE COURT: "But does he do more than that, does he threaten you, does he —"

Ms. WOOLDRIDGE: "He wants (inaudible)."

Ms. DULONG: "I would object to that. She wrote something up, your honor. I'm not (inaudible) she's going to testify. I haven't had a chance to see it."

THE COURT: "Is that a recitation of some prior incidents?"

Ms. WOOLDRIDGE: "Yes, just to explain to you what I had to go through the first time and letters from people that (inaudible)."

THE COURT: *"But my question to you is why do you feel you need the additional protection of an order for abuse and to stay away from your residence and not contact you, which if you didn't have you feel you'd be subject to some danger or imminent physical harm?"*

Ms. WOOLDRIDGE: *"Yes."*

THE COURT: *"Why? Why do you feel that?"*

Ms. WOOLDRIDGE: *"Because (inaudible)."*

THE COURT: "That was when you were living with him, right? You were married?"

Ms. WOOLDRIDGE: "That was when we negotiated our divorce. Every time (inaudible)."

THE COURT: "Okay. And what's happened recently? You've been separated for seven years?"

Ms. WOOLDRIDGE: "Yeah, and the divorce says that I do what I do, and there was just fighting about everything; it was just literally no child support payments, take care of all the important issues (inaudible), and there is no attempt, you know, at discussion, there's just intimidation,

there's threats he's going to take them away from me, threatens them he's going to take them away from me. My children depend on me."

THE COURT: "So you feel the ability to seek legal redress on the relative responsibilities to the children under the divorce, you feel that you have unequal abilities to negotiate with him because of his intimidating tactics, is that what you're saying?"

Ms. WOOLDRIDGE: "Yes."

(Emphasis supplied). The questions that the judge put to Wooldridge that we have italicized show that he had not lost sight of the central importance of the fear of imminent serious physical harm in these cases. See *Commonwealth* v. *Gordon*, 407 Mass. 340, 348-349 (1990). The judge inquires of Wooldridge why she feels she is subject to some danger of imminent physical harm. Wooldridge merely responds, "Yes." The judge then asks, "Why? Why do you feel that?" The transcript reads, "Because," and then, just short of the meat in the coconut, reads "(inaudible)." The answer may have described past physical harm and fear of a repeat performance that gave the judge a basis for his order.[3] We are not prepared, as a reviewing court, to hypothesize the absence of a response that might support a finding of fear of imminent serious physical harm. It is, of course, the burden of an appellant to provide us with those portions of the record that support his claims on appeal. *Arch Med. Assocs., Inc.* v. *Bartlett Health Enterprises, Inc.*, 32 Mass. App. Ct. 404, 406 (1992). A party claiming an insufficiency of evidence, therefore, has the burden on appeal of furnishing the court with all the evidence. Gaps in an audio record of the kind that appeared here can be repaired by using the procedure set out in Mass.R.A.P. 8(b)(3)(v), as amended, 388 Mass. 1110 (1983), captioned: "Unintelligible Portions of the Cassette."

On the basis of the record, as it was allowed to stand, we

---

[3] It did not escape our notice that, in continuing his colloquy with Wooldridge, the judge remarks, "Okay," and then asks, "And what's happened recently?" Wooldridge's response describes no current conduct that amplifies her earlier claim of fear of some imminent physical harm. We do not think, however, that this exchange justifies an assumption on our part that Wooldridge's response recorded as inaudible gave the trial judge nothing to go on to support his ultimate finding and order.

shall not disturb the issuance of the protective order issued September 12, 1996, directing Hickey to stay away from Wooldridge. There was no evidence that warranted issuance of the ex parte order of September 4, but that order was subsumed by the posthearing order of September 12. There was no evidence of imminent serious physical harm to the children. The most that Wooldridge said about the children, other than that they were subjected to verbal harassment by their father, is that their father "has hit my son and grabs him when angry." Without further explanation, that statement was not evidence of abuse within the meaning of the statute.

The orders of September 12 and November 26, 1996, directing the defendant Hickey to stay away from Wooldridge are affirmed. The order to him to stay away from his children is vacated. The Probate Court judge shall cause a direction to be sent, conformably with G. L. c. 209A, § 7, third par., for the destruction of all record of the vacated order.

*So ordered.*