JESSE C. UTTARO *vs.* JANET B. UTTARO.

No. 00-P-160.

Middlesex. December 17, 2001. - May 28, 2002.

Present: GREENBERG, MASON, & DOERFER, JJ.

*Abuse Prevention. Statute,* Construction.

A husband seeking to make mutual a G. L. c. 209A protective order, based on his fear of the wife's selective enforcement of the earlier order lodged against him, did not demonstrate that the wife, by allegedly having the husband arrested on the basis of conduct that she had either initiated or exaggerated out of proportion, had "abused" him, as the cases have defined that term in the statute, so as to justify the issuance of a mutual no-contact order against her. [873-875]

COMPLAINT filed in the Middlesex Division of the Probate and Family Court Department on July 22, 1999.

The case was heard by *Sheila E. McGovern,* J.

*Patricia A. Levesh* for James B. Uttaro.

GREENBERG, J. Janet Uttaro appeals from a restraining order made mutual and applied against her by a judge in the Middlesex Probate and Family Court, who had heard testimony that Jesse Uttaro was in fear of further enforcement of the original order lodged against him. We vacate the order against Janet.

As background to the controversy, it is necessary to describe the events that spawned it. The Uttaros' marital strife surfaced in August, 1998, when Janet, upon demonstrating that she had been abused physically and otherwise by Jesse, secured a G. L. c. 209A, § 3, abuse prevention order against him in Waltham District Court, the order to run until December 3, 1998.[1] On

---

[1]By virtue of the District Court order, Jesse was ordered to refrain from abusing Janet, not to contact her, to remain fifty yards away from her person (except that he could page their children), to immediately leave and stay away from the marital residence and Janet's workplace, to surrender his firearms, to

September 8, 1998, Jesse filed a divorce complaint in the Middlesex Probate and Family Court. The terms of the District Court G. L. c. 209A order were later modified by a Probate Court judge to allow Jesse telephone contact with the parties' three children, who at that time continued to reside with Janet in the marital home in Waltham. In all other respects, the order remained the same.

On January 12, 1999, after the original District Court order had expired, Janet obtained another G. L. c. 209A order from the Middlesex Probate and Family Court, presumably on a showing of her continuing need. See *Pike* v. *Maguire*, 47 Mass. App. Ct. 929, 929-930 (1999); Commentary to § 6:08 of the Guidelines for Judicial Practice: Abuse Prevention Proceedings (1997). Jesse failed to appear on the return date, and this order was extended until January 21, 2000.

The parties' domestic arrangement changed in the summer of 1999: Jesse moved back into the marital residence with the parties' children — two daughters, at that time ages eighteen and nineteen, and a son, age fifteen. Janet took up residence on her own but maintained close contact with the children, picking them up and driving them to various locations. The problem with this arrangement, among others, was that the consequent interaction involving the children caused the parties to clash.

During the middle of the summer in 1999, the middle child was in the hospital. Her brother tried to contact her or find out about her condition by telephone. The call was directed to Janet, who was at her daughter's bedside. According to Janet, their conversation was rudely interrupted by Jesse, who grabbed the telephone from the son and cursed at Janet for not disclosing that their daughter was in the hospital. After this incident, Janet applied for a criminal complaint against Jesse in the Waltham District Court.

Jesse was arrested, but his motion to vacate the G. L. c. 209A order, later supplemented with an affidavit, was allowed on July 15, 1999. Janet did not appear at the hearing on this motion; however, she obtained another G. L. c. 209A order from the

---

stay away from the marital vehicle, to pay the first and second mortgages on the premarital residence, and to return funds to a joint bank account. At that time, Janet was awarded custody of their children.

Middlesex Probate and Family Court on July 19, 1999, returnable on July 22, 1999.

Both parties appeared on July 22 before a different Probate Court judge. Jesse applied for a G. L. c. 209A order to protect himself from what he considered selective prosecution of the prior orders against him. A bar advocate was appointed to represent Janet, and Jesse was represented by private counsel. As might be expected, conflicting testimony was presented to the judge as to whether Janet unjustifiably had Jesse arrested for violations of the no-contact orders. The hearing was acrimonious and emotional. The vitriolic comments of the parties got out of hand. At one point, the judge suggested a psychiatric referral. The judge's patience was taxed as she tried to broker an acceptable arrangement to accommodate the parties' needs. Her attempt failed, and on August 11, 1999, she issued written findings and rulings supporting an extension of the July 19, 1999, order against Jesse, until July 21, 2000, and a G. L. c. 209A no-contact order against Janet, from which she appeals.[2]

*Analysis.* The crucial issue in a G. L. c. 209A dispute is whether the party who seeks protection has proven, by a preponderance of the evidence, that abuse has occurred. *Frizado* v. *Frizado*, 420 Mass. 592, 597 (1995). Among other things, G. L. c. 209A, § 1, as appearing in St. 1990, c. 403, § 2, defines abuse as "attempting to cause or causing physical harm" or "placing another in fear of imminent serious physical harm." This language closely approximates the common-law description of assault, see *Commonwealth* v. *Gordon*, 407 Mass. 340, 349 (1990), and requires proof of some act that places the complainant in reasonable apprehension that force may be used. *Commonwealth* v. *Delgado*, 367 Mass. 432, 436-437 (1975).

---

[2]Jesse did not file a brief in this appeal, and he has not appealed from the August 11, 1999, renewal of Janet's restraining order against him.

Although not raised, we note that Janet's appeal is technically moot, the order against her having expired on July 21, 2000. Compare *Wooldridge* v. *Hickey*, 45 Mass. App. Ct. 637, 638 (1998), with *Wotan* v. *Kegan*, 428 Mass. 1003, 1003-1004 (1998). However, the proper issuance of mutual restraining orders is an issue of statewide legal significance that warrants a decision in this case despite its mootness. See *Cobb* v. *Cobb*, 406 Mass. 21, 23-24 (1989); *Frizado* v. *Frizado*, 420 Mass. 592, 593-594 (1995); *Larkin* v. *Ayer Div. of the Dist. Ct. Dept.*, 425 Mass. 1020, 1020 (1997). Cf. *Zullo* v. *Goguen*, 423 Mass. 679, 680 (1996).

The complainant's "[g]eneralized apprehension, nervousness, feeling aggravated or hassled, i.e., psychological distress," is insufficient. *Wooldridge* v. *Hickey*, 45 Mass. App. Ct. 637, 638-639 (1998).

In the instant case, the probate judge expressed doubt whether Jesse's representations satisfied the requisite burden of proof outlined by the cases.[3] What troubled her was Janet's placing Jesse at risk for arrest from what she described as "unilaterally acting different than with the restraining order," that is, Janet's calling the police to have Jesse arrested on the basis of conduct that she either initiated or exaggerated out of proportion. She found that Janet "selectively sought enforcement of the existing restraining order[,] alleging violations" in two questionable instances. One involved the hospital telephone call already mentioned and the other occurred on June 14, 1999, when Jesse drove in front of her home while she was having an outdoor barbeque, honking his horn and shouting epithets as he drove past. The judge also noted that Janet admitted that she had appeared at the former marital home, repeatedly contacted Jesse by telephone, and had gone out to dinner with Jesse.[4] Ultimately, the judge found that Janet's reactions to Jesse's vexatious behavior "placed [his] liberty in jeopardy in that she has forced him to possibly violate the existing restraining orders . . . issued to him, thereby subjecting him to abuse under the terms of [c.] 209A." The judge strayed by concluding that Jesse's fear of arrest justified the issuance of a protective order against Janet. In essence, she reinstated Janet's protective order against Jesse, which had previously been vacated, and, to appease Jesse, is-

[3]Jesse's application for G. L. c. 209A relief does not indicate which definition of abuse he invoked since he did not check off any box in section J of the form complaint. He merely inserted the words "see affidavit" in that section, presumably a reference to the affidavit supplementing his motion to vacate. Further, neither his affidavit nor his testimony at the hearing included any details of physical or sexual abuse, either actual or attempted.

[4]To illustrate the selectivity, Jesse detailed in his affidavit other instances, which the judge did not cite in her written findings and rulings, in which Janet's actions were inconsistent with the G. L. c. 209A order: Janet had called Jesse when she had a flat tire, and she had told one of their children that it was not a violation of the order for Jesse and her to attend one of their daughter's graduation exercises together.

sued a mutual no-contact order against Janet pursuant to G. L. c. 209A, § 3.[5]

Although we empathize with the judge's dilemma in this case, nothing in the record supports a finding that Janet "abused" Jesse, as the cases have defined that term in the statute. We take this opportunity to emphasize that applications for retaliatory abuse prevention orders should be allowed only if the predicate conditions are shown and not as a prophylactic agent to prevent putative violations.

The bottom line is that neither G. L. c. 209A, nor the decisions interpreting it, contain any authority allowing the fear of arrest, even upon innocent contact, as a basis for a reciprocal restraining order. The stringent requirements in G. L. c. 209A, § 3, appear not without purpose and reflect a legislative policy against the issuance of mutual restraining orders except in rare instances. See Gender Bias Study of the Supreme Judicial Court 93-94 (1989). See also Note, Why Civil Protection Orders are Effective Remedies for Domestic Violence but Mutual Protective Orders Are Not, 67 Ind. L.J. 1039, 1061-1062 (1992). As Janet observes in her brief, a mutual restraining order in this case creates confusion not only for law enforcement authorities who must interpret conflicting terms contained in the protective orders, but also for the parties and the courts because each party has been directed not to contact one another. Moreover, allowing mutuality in restraining orders would chill the abuse prevention system established by G. L. c. 209A, placing the victim in fear of the consequences of strict (or lax) enforcement of prior orders, cf. *Sommi* v. *Ayer*, 51 Mass. App. Ct. 207, 210-211 (2001), particularly where "contact" has been broadly interpreted. *Commonwealth* v. *Finase*, 435 Mass. 310, 314 (2001). *Commonwealth* v. *Mendonca*, 50 Mass. App. Ct. 684, 687 (2001).

An important postscript lurks in this case: Janet seeks to add the phrase "nunc pro tunc" to our vacating of this order in this

---

[5]Section 3, as amended by St. 1990, c. 403, § 3, provides in part: "A court may issue a mutual restraining order or mutual no-contact order pursuant to any abuse prevention action only if the court has made specific written findings of fact. The court shall then provide a detailed order, sufficiently specific to apprise any law officer as to which party has violated the order, if the parties are in or appear to be in violation of the order."

case. See *Santos* v. *Chrysler Corp.*, 430 Mass. 198, 216 (1999). We need not do so. The Supreme Judicial Court has already decided that the registry created by G. L. c. 209A, § 7, includes specific measures to ensure that the record of a vacated restraining or protective order will be eliminated, thereby obviating the possibility of public disclosure or possible service of a vacated order. *Vaccaro* v. *Vaccaro*, 425 Mass. 153, 157-159, 161-162 (1997). These mechanisms are sufficient safeguards for Janet, without our intrusion into the legislative thicket.

Janet is therefore entitled to have vacated that portion of the August 11, 1999, order that directs her to have no contact with Jesse.

*So ordered.*