## Deborah M. Vittone *vs.* Bruce J. Clairmont.

No. 03-P-1661.

Berkshire. February 18, 2005. - September 9, 2005.

Present: Perretta, Lenk, & Doerfer, JJ.

*Abuse Prevention. Protective Order. Statute,* Construction. *Words,* "Imminent serious physical harm."

A District Court judge did not abuse his discretion in entering a permanent abuse prevention order, where, considering the totality of the circumstances of the parties' relationship, including the defendant father's prior serious physical and sexual abuse of the plaintiff (his former wife) and the rape and sexual assault of two of their children, as well as his conduct while in prison, the judge reasonably could have concluded that the plaintiff had met her burden of demonstrating that she was in reasonable fear of "imminent serious physical harm," as defined in G. L. c. 209A, § 1, justifying her continued need for the order. [483-489]

Complaint for protection from abuse filed in the Pittsfield Division of the District Court Department on September 16, 2002.

A motion to extend an abuse prevention order was heard by *Paul M. Vrabel,* J.

*John M. Updegraph, III,* for the defendant.

Lenk, J. After being notified that her former husband, the defendant, Bruce J. Clairmont, was about to be released from prison, where he had served eight years for raping and indecently assaulting two of their five children, the plaintiff, Deborah M. Vittone, acting pro se, filed a complaint for protection from abuse on September 16, 2002. Such an abuse prevention order had been in place before the defendant had been incarcerated, but it lapsed while he was in prison and she did not then seek to have it renewed. In the months after the ex parte restraining order issued on September 16, 2002, hearings took place at which both parties appeared, were sworn, and had

counsel. Ultimately, a permanent restraining order was issued on January 20, 2003, from which the defendant now appeals. He contends, in essence, that because he had had no direct contact with the plaintiff or their children in the preceding eight years, and had not harmed or threatened to harm them in that period, the evidence failed to establish that he placed the plaintiff or their youngest son in reasonable fear of "imminent serious physical harm," as required by statute before an abuse prevention order may issue or be renewed. G. L. c. 209A, §§ 1, 3. We affirm.

*Background.* Accompanying the plaintiff's September 16, 2002, pro se complaint for a G. L. c. 209A order was her affidavit, which stated: "physical & sexual abuse throught [*sic*] marriage[.] I testified against him in Superior Court — was threatening during marriage, after separation & leading up to trial." The ex parte order that entered ordered the defendant not to abuse or contact the plaintiff, to stay at least twenty-five yards away from her, and not to contact the two youngest children, Rachel and Ronald.[1] The order was extended without modification on September 23, October 10, October 17, and November 15, 2002. The defendant appeared at the October 10 hearing but the judge extended the order without prejudice to allow him to consult with counsel.

Hearings of some length took place on October 17, 2002, and January 10, 2003, at which the parties were present, sworn, and represented by counsel.[2] At the conclusion of the January 10, 2003, hearing, the judge issued his ruling from the bench; he extended the abuse prevention order and made it permanent, modifying it only to reduce the stay away distance from twenty-

---

[1] We use pseudonyms for all of the children throughout this opinion.

[2] The plaintiff had apparently been proceeding pro se until the hearing on October 17, 2002, when Attorney Timothy T. Shugrue, who had represented the plaintiff in her domestic relations case for many years, happened "as luck had it" to be in court when the plaintiff's G. L. c. 209A complaint was being heard. Much to Mr. Shugrue's credit, recognizing that the plaintiff was financially unable to retain counsel for this matter and in light of his great familiarity with the parties, he took on representation in the proceedings below on a pro bono basis. The plaintiff did not file an appellate brief, nor did she appear for argument.

five to ten yards and to require the defendant also to stay away from the children's respective schools.[3]

The facts before the judge were these.[4] The plaintiff and the

---

[3]In 2002, when the plaintiff applied for the abuse prevention order on her own behalf and that of her two youngest children, Rachel and Ronald, four of the parties' five children had reached adulthood, including the two (Nicholas and Rachel) who had been victims of their father's crimes of sexual violence. Nicholas was then twenty-two years old; Rachel was nineteen years old and attending college nearby. Ronald, born April 16, 1988, was fourteen years old and in high school. Rachel had apparently accompanied her mother to court initially but, perhaps because of school, was not present for the October 17, 2002, or subsequent hearings. Although the permanent order that entered on January 10, 2003, included Rachel, it was modified, after a hearing on September 10, 2004, at which both parties were present, to remove Rachel from the order. Accordingly, we consider the order only as it pertains to the plaintiff and Ronald.

[4]The parties were present in court on October 17, 2002, had been sworn, and were available to testify. The plaintiff testified very briefly, but the case went in largely on the representations of counsel as well as on the plaintiff's affidavit, the defendant's criminal convictions, and, it appears, on the defendant's history of prior restraining orders. There was no objection to this procedure despite the judge's inquiry, directed to the defendant's counsel, whether there was any need for live testimony. Had the defendant contested any of the facts contained in the plaintiff's affidavit or as represented by her counsel, he was free to cross-examine her, to present other evidence, and to testify, but chose not to do so. It was the plaintiff's burden in this civil proceeding, which provides for a "hearing," to establish by a preponderance of the evidence the facts justifying the order sought. Each side must have a meaningful opportunity to challenge the other's evidence, but "the rules of evidence need not be followed, provided that there is fairness in what evidence is admitted and relied on." *Frizado* v. *Frizado*, 420 Mass. 592, 597-598 (1995). The Legislature intended that abuse prevention proceedings "be expeditious and as comfortable as it reasonably can be for a lay person to pursue. Judges often must deal with large numbers of these emotional matters in busy court sessions. The process must be a practical one." *Id.* at 598.

While not claiming on appeal that the procedures below were in any way unfair, the defendant suggests that the only evidence before the judge consisted of the defendant's convictions, the plaintiff's brief testimony, and her affidavit, which he characterizes as "generalized" and "conclusory." This is incorrect. The defendant's attorney was present, did not object to proceeding without live testimony, did not cross-examine the plaintiff on her affidavit, and did not seek to put in evidence controverting either the affidavit or the representations of plaintiff's counsel, who was familiar with the parties' protracted divorce proceedings. See *Smith* v. *Joyce*, 421 Mass. 520, 521-522 (1995). The judge afforded both sides a meaningful opportunity to challenge the other's evidence, there was nothing hurried or unfair about the procedures followed in the absence of any objection, and the judge was accordingly entitled to credit the plaintiff's essentially undisputed evidence. He was free,

defendant had formerly been married and had five children together. On December 15, 1994, the defendant was convicted after a trial by jury of sixteen sexual abuse offenses against their son Nicholas and their daughter Rachel. He was convicted of two counts of rape of child with force as to Nicholas and one count as to Rachel, five counts of indecent assault and battery on a child under fourteen as to Nicholas and four counts as to Rachel, and four counts of open and gross lewdness with Rachel as his victim. He was sentenced to a nine- to twelve-year prison term, his convictions were upheld on appeal, *Commonwealth* v. *Clairmont*, 43 Mass. App. Ct. 1103 (1997), and he was released on parole in 2002 after serving eight years. The plaintiff and the two children, Rachel and Nicholas, had testified at trial.

The plaintiff had been physically and sexually abused throughout the marriage and the defendant had been threatening to her during the marriage, after their separation, and during the period of time leading up to the trial at the end of 1994. She had obtained one or more restraining orders against the defendant prior to his incarceration, which expired while he was in prison without her requesting extensions.

The parties were divorced during the defendant's imprisonment after protracted proceedings. The defendant wanted visitation with the children following his conviction, but the divorce decree ultimately provided that there be none. The plaintiff was put in financially straitened circumstances since she received no money from the defendant. While he was in prison, the defendant put marital assets out of the plaintiff's reach by transferring them through his accountant brother to members of his family. Following the divorce, the defendant apparently had some hand in having his mother put a lien on marital property that was to have been transferred unencumbered to the plaintiff pursuant to a court-ordered property division. His failure to remove the lien resulted in a judgment of contempt, subsequently

moreover, to draw an adverse inference from the defendant's failure to testify, though such an inference is not by itself enough to meet the plaintiff's burden. *Frizado* v. *Frizado, supra* at 596. Given the uncontroverted affidavit, criminal convictions, and representations of counsel, we need have no concern that such an adverse inference would have been the sole evidence on which the judge issued the permanent order.

upheld on appeal. *Clairmont* v. *Clairmont*, 60 Mass. App. Ct. 1108 (2003).

Although the terms of his incarceration prohibited the defendant from contacting or corresponding with the plaintiff or their children,[5] he used the Internet and print media to blame the plaintiff for having falsely accused him.[6] It is undisputed that, other than for Probate and Family Court hearings, the defendant had no direct contact with the plaintiff or their children during his incarceration or in the brief period since his release from prison on parole. The plaintiff remains "deathly afraid" for herself and the children that the defendant will physically harm them. She applied for a G. L. c. 209A order directly upon learning of his imminent release from prison.

*Analysis.* The defendant maintains that the judge erred in entering a permanent abuse prevention order where the only evidence supporting a reasonable fear of serious physical harm was of criminal conduct that had occurred more than eight years before and did not involve as victims either the plaintiff or their youngest son, Ronald. The gist of his argument is that the statutory scheme, as construed by the case law, requires evidence of recent words or conduct that would themselves place a person in reasonable fear of imminent serious physical harm and that there was no such evidence here. He points in support to the Legislature's use of the present tense in relevant sections of the statute, which entitles only those "suffering from abuse" to apply for court-ordered remedies to stop or prevent further abuse. See G. L. c. 209A, § 3. He also calls our atten-

---

[5]This was one of the few disputed points at the hearing. The plaintiff's lawyer represented that during the defendant's imprisonment, he was prevented by the Department of Correction from contacting the plaintiff or the children. The defendant's lawyer attempted to but did not quite controvert this by representing that the defendant did have the ability while in prison to make telephone calls and write letters because he, the attorney, had received calls and letters from him.

[6]The defendant's lawyer disputed that the defendant had access to the Internet because "[t]here is no access to [I]nternet in the State Prison system." The plaintiff's lawyer stated, "I can show you documents with his E-mail address as justicedenied or Bruce.htm listing my client's name as a false accuser throughout the [I]nternet where he's also sent out various information with his name, . . . his State Prison address which he sent throughout . . . the country both through print media and through the [I]nternet where he's accused my client of false accusations."

tion to recent cases that construe G. L. c. 209A, emphasizing that the focus must be "on preventing imminent serious physical harm, not merely responding to past abuse." *Dollan* v. *Dollan*, 55 Mass. App. Ct. 905, 906 (2002). See *Jordan* v. *Clerk of the Westfield Div. of the Dist. Ct. Dept.*, 425 Mass. 1016, 1017 (1997); *Larkin* v. *Ayer Div. of the Dist. Ct. Dept.*, 425 Mass. 1020, 1020 (1997); *Wooldridge* v. *Hickey*, 45 Mass. App. Ct. 637, 639 (1998); *Uttaro* v. *Uttaro*, 54 Mass. App. Ct. 871, 873-874 (2002); *Jones* v. *Gallagher*, 54 Mass. App. Ct. 883, 888-889 (2002); *Carroll* v. *Kartell*, 56 Mass. App. Ct. 83, 85-87 (2002); *Szymkowski* v. *Szymkowski*, 57 Mass. App. Ct. 284, 286-288 (2003); *Keene* v. *Gangi*, 60 Mass. App. Ct. 667, 669-671 (2004).

Neither the evidence that was before the judge, however, nor the law that he was called upon to apply is circumscribed in the rigid manner that the defendant suggests. " 'Preservation of the fundamental human right to be protected from the devastating impact of family violence' is the public policy of this Commonwealth, reflected in numerous statutes addressing the problem of domestic violence," including G. L. c. 209A. *Mitchell* v. *Mitchell*, 62 Mass. App. Ct. 769, 772-773 (2005), quoting from *Champagne* v. *Champagne*, 429 Mass. 324, 327 (1999). See *Commonwealth* v. *Gordon*, 407 Mass. 340, 346 (1990). Under G. L. c. 209A, § 3, as amended through St. 1990, c. 403, § 3, "[a] person suffering from abuse from an adult or minor family or household member may" obtain a protective order against a defendant who has perpetrated such abuse. "Abuse" is defined by the statute as "(a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; [or] (c) causing another to engage involuntarily in sexual relations by force, threat or duress." G. L. c. 209A, § 1, as amended by St. 1990, c. 403, § 2.

Upon a finding of abuse, the statute provides several abuse prevention remedies from which a judge may choose, but relief on an initial complaint is limited to one year. General Laws c. 209A, § 3, also provides that if, upon expiration of the initial order, the plaintiff appears in court, "the court shall determine whether or not to extend the order for any additional time reasonably necessary to protect the plaintiff or to enter a

permanent order." The judge's discretion at a renewal hearing has accordingly been characterized as "broad." *Crenshaw* v. *Macklin*, 430 Mass. 633, 635 (2000). See *Iamele* v. *Asselin*, 444 Mass. 734, 742 (2005).

"Abuse" has the same statutory definition in the context of initial, extended, and permanent orders, and there is no presumption or entitlement that an initial order will be continued or made permanent absent a showing of continued need. See *Pike* v. *Maguire*, 47 Mass. App. Ct. 929, 929 (1999); *Jones* v. *Gallagher*, 54 Mass. App. Ct. at 889. In recognition of the fact that "in some cases, respondents will obey the initial order, and that obedience alone is not a ground for refusing an extension of the initial order," *Iamele* v. *Asselin*, 444 Mass. at 738, G. L. c. 209A, § 3, states that "[t]he fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for denying or failing to extend the order . . . ." Further, "[a]t a hearing on the plaintiff's request for an extension of an order issued after notice to the defendant and an opportunity to be heard, the plaintiff is not required to re-establish facts sufficient to support that initial grant of an abuse prevention order." *Rauseo* v. *Rauseo*, 50 Mass. App. Ct. 911, 913 (2001).

Although the defendant does not address the point, we view the proceedings before the judge as being in the nature of an extension hearing rather than one in which an initial order was sought.[7] "The inquiry at an extension hearing is whether the plaintiff has shown by a preponderance of the evidence that an

[7]Immediately prior to the defendant's incarceration in 1994, the last time it was possible for him to threaten or physically abuse the plaintiff or his children, the plaintiff had an abuse prevention order in place against him. She did not seek to have this order extended or made permanent when it expired, since the defendant was then incarcerated. So long as the defendant was in prison and unable to contact her or their children, she feared no imminent serious physical harm from him. To the extent that imprisonment is, if not the ultimate restraining order, at least its functional equivalent, it is understandable that she did not seek to renew the order or make it permanent at the time. In this regard, although the statute permitted issuance of permanent orders at the time, some uncertainty appears to have existed concerning them. See *Crenshaw* v. *Macklin*, 430 Mass. at 636; *Lonergan-Gillen* v. *Gillen*, 57 Mass. App. Ct. 746, 748 (2003). Further, given the court's rescript opinion in *Jordan* v. *Clerk of the Westfield Div. of the Dist. Ct. Dept.*, 425 Mass. at 1017, there is some question whether a plaintiff in such circumstances could establish the

extension of the order is necessary to protect her from the likeli-hood of 'abuse' as defined in G. L. c. 209A, § 1." *Iamele* v. *As-selin*, 444 Mass. at 739. When such alleged abuse consists of "placing another in fear of imminent serious physical harm," as here, it is a form of abuse that "closely approximates the com-mon law description of the crime of assault." *Commonwealth* v. *Gordon*, 407 Mass. at 349. In this regard, "[i]n determining whether an apprehension of anticipated physical force is reason-able, a court will look to the actions and words of the defendant in light of the attendant circumstances." *Ibid.*

A restraining order is not to be issued "simply because it seems to be a good idea or because it will not cause the defendant any real inconvenience," *Smith* v. *Joyce*, 421 Mass. 520, 523 n.1 (1995). There must be more than "[g]eneralized apprehension, nervousness, feeling aggravated or hassled," *Wooldridge* v. *Hickey*, 45 Mass. App. Ct. at 639, because what is of "central importance" is "the fear of imminent serious physical harm." *Id.* at 641. The applicant's fear must be more than "subjective and unspecified"; viewed objectively, the question is "whether the plaintiff's apprehension that force may be used is reasonable." *Carroll* v. *Kartell*, 56 Mass. App. Ct. at 86-87.

In determining whether abuse, as defined in G. L. c. 209A, § 1(*b*), exists, a judge must ascertain whether the applicant's fear of imminent serious physical harm is objectively reason-able. "In evaluating whether a plaintiff has met her burden, a judge must consider the totality of the circumstances of the par-ties' relationship. . . . The judge is to consider the basis for the initial order in evaluating the risk of future abuse should the existing order expire. This does not mean that the restrained party may challenge the evidence underlying the initial order." *Iamele* v. *Asselin, supra* at 740.

The judge will look to the defendant's words and actions, not standing alone or in a vacuum, but in the context of the "at-

"imminence" of any serious physical harm from one who remains incarcerated. It was only when the plaintiff learned of the defendant's im-minent release from prison that she was again "deathly afraid" and sought forthwith an extension of the same protection that she had had in place im-mediately before the defendant's incarceration. In the circumstances, this was an extension hearing.

tendant circumstances." *Commonwealth* v. *Gordon*, 407 Mass. at 349. The inquiry is particularized and situation dependent, calling upon the judge to examine the words and conduct "in the context of the entire history of the parties' hostile relationship." *Pike* v. *Maguire*, 47 Mass. App. Ct. at 930. Indeed, the nature and duration of a relationship, as well as any prior history of violence, threats, or hostility within it, serve as the necessary backdrop for reaching a proper understanding of more recent words and behavior as well as for assessing the reasonableness of an applicant's fear of imminent serious physical harm.

> "Other factors that the judge should consider include, but are not limited to: the defendant's violations of protective orders, ongoing child custody or other litigation that engenders or is likely to engender hostility, the parties' demeanor in court, the likelihood that the parties will encounter one another in the course of their usual activities . . . and significant changes in the circumstances of the parties. No one factor is likely to be determinative. It is the totality of the conditions that exist at the time that the plaintiff seeks the extension, viewed in the light of the initial abuse prevention order, that govern." (Citation omitted.)

*Iamele* v. *Asselin*, 444 Mass. at 740-741.

The defendant here challenges the issuance of a permanent restraining order on what he claims was inadequate evidence consisting, in his view, solely of his convictions of crimes of sexual violence that occurred more than eight years earlier and that did not involve either the plaintiff or their youngest son as victims. The evidence before the judge as we have earlier described it, however, is considerably more extensive than just those convictions.[8] The question before us, then, is whether, on the evidence that was before him, the judge abused his discretion by issuing a permanent restraining order.

The judge had the parties before him and was in a position to observe their demeanor. He was apprised of a "history of several restraining orders" that had been in effect prior to the

---

[8]See note 4, *supra.*

defendant's incarceration. See G. L. c. 209A, § 7. He also had before him information forming a basis for those prior restraining orders, viz., the defendant's physical and sexual abuse of the plaintiff and his threatening behavior toward her throughout the marriage. The defendant's convictions of rape and sexual assault of two of his children further evidenced the serious acts of domestic violence against multiple members of his family in which the defendant had been engaged prior to his imprisonment. The judge was informed as well that the plaintiff and two children had testified against the defendant in his criminal case, essentially helping to bring about the incarceration that was just coming to a close; that they had done so might reasonably be thought to have engendered some hostility in the defendant.

The defendant's conduct while in prison, viewed against this backdrop, could also be understood as having an ominously wrathful and controlling quality. He did not contact his wife or children directly for eight years, but this was not a matter of choice on his part. As a consequence of his imprisonment, he did not have the opportunity to contact them. Nonetheless, he did what he could to have an impact on them. In addition to protracted if unsuccessful efforts in Probate and Family Court to gain visitation rights with the children, he waged a form of financial warfare on his family, going so far as to be adjudicated in contempt. Apparently neither acknowledging nor showing remorse for his crimes, he used the print media if not also the Internet to blame the plaintiff for having falsely accused him. Upon his release from prison, the defendant was to live in the same general area as the plaintiff and their youngest son. Unlike the preceding eight years, he would once again have the opportunity to be in physical proximity to them.

The judge could credit that the plaintiff was genuinely frightened of the defendant, who had in the past not only physically and sexually abused her but also had raped and sexually assaulted two of their children when they were under the age of fourteen. When she sought the extension order on her own behalf and that of the youngest son, the boy was fourteen years old. Her fear for him, given what had happened to his siblings, seems reasonable on its face. The particularly egregious nature

of the crimes that the defendant committed may also properly factor into any assessment of the reasonableness of the plaintiff's fear of imminent serious physical harm. See *Doe* v. *Keller*, 57 Mass. App. Ct. 776, 779 (2003) (serious prior physical and sexual abuse justified extension). The infliction of some wounds may be so traumatic that the passage of time alone does not mitigate the victim's fear of the perpetrator. Indeed, for the judge, this factor seemed especially compelling. He noted: "[C]ommon sense tells me that if someone has been convicted of rape, the harm is forever."

Considering the "totality of the circumstances of the parties' relationship," *Iamele* v. *Asselin*, 444 Mass. at 740, including the defendant's prior serious physical and sexual abuse of the plaintiff and the rape and sexual assaults of two of their children, as well as his conduct while in prison, the judge could reasonably have concluded that the defendant's anger toward his family had never subsided, that the pattern of abuse had continued while he was in prison, that the situation remained volatile, and that the plaintiff had met her burden. She had shown that she was in reasonable fear of imminent serious physical harm, justifying her continued need for the order, and the judge did not abuse his discretion in entering the permanent order.

*Order dated September 10, 2004,*
*affirmed.*