The defendant appeals from the issuance of a G. L. c. 209A abuse prevention order entered after notice on March 13, 2017, and its one-year extension issued by a different judge, entered on April 5, 2017.[2] He contends that the plaintiff failed to demonstrate, at either hearing, that she was in reasonable apprehension of imminent serious harm. We affirm.
Background. The plaintiff filed an application for a 209A order, and an ex parte order issued, on March 3, 2017. With minor variations, the facts presented at the ex parte hearing and at the two hearings after notice, based on the plaintiff's affidavit and testimony, were the same.
The plaintiff and the defendant had been married for eleven years. The plaintiff had recently informed the defendant that she was unhappy in the marriage, and the couple had begun marriage counselling. The defendant became depressed, gained weight, and started hoarding. His attitude and conduct toward the plaintiff became increasingly erratic and paranoid, and he became intrusive and confrontational. He began searching through her telephone, electronic mail, trash, and purse. He photocopied notes in her purse that she had written for discussion with their counsellor and accused her of cheating on him.
Before work on the morning of March 3, 2017, the plaintiff met with a friend at her previous place of employment in Agawam. The defendant telephoned her to ask where she was and to talk about their relationship. The plaintiff said that she was seeing a friend and that it was not a good time to talk. Twenty minutes later, the defendant arrived at the building where the plaintiff had met her friend and confronted her about not spending time with him to work on their relationship. The plaintiff again told him that she did not want to talk, and she asked him to leave her alone so she could go to work.
Instead, when the plaintiff drove to work in Holyoke, the defendant followed closely behind in his truck. Frightened by the defendant's behavior, the plaintiff tried to telephone the security department at her workplace for an escort into the building. Unable to reach the security department, she parked in front of the building entrance. The defendant parked his car directly behind the plaintiff's car, and as she started to enter the building, again insisted that the plaintiff talk with him. When she declined and asked him to leave, the defendant started to get inside the plaintiff's car. She told him to get out of her car, but he refused, insisting that if she would not speak with him, the marriage was over and he wanted her out of the house. The plaintiff then went inside the building to get someone from security. The defendant got into his truck and drove away before security officers arrived outside. The plaintiff went to court that same day to apply for a 209A order.
The plaintiff testified that this incident, combined with the defendant's recent escalating erratic conduct and past incidents, caused her to fear for her safety. The defendant had been verbally abusive throughout their marriage, calling her derogatory names in front of family members. Several years before he had picked up the family's dog by the neck and punched it in the head after it scratched the paint of his truck. About one year before the plaintiff sought the 209A order, in the course of an argument with her, he punched a wall in the kitchen, breaking the sheetrock. She was also afraid because the defendant owned more than fifty guns, which at times throughout their marriage he had failed to secure properly; however, there was no evidence that he had ever misused or threatened her with a gun.
Discussion. "We review the issuance of an order pursuant to G. L. c. 209A for an abuse of discretion or other error of law." E.C.O. v. Compton, 464 Mass. 558, 561-562 (2013). "We accord the credibility determinations of the judge who 'heard the testimony of the parties ... [and] observed their demeanor' ... the utmost deference." Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140 n.3 (2006), quoting from Pike v. Maguire, 47 Mass. App. Ct. 929, 929 (1999).
Under G. L. c. 209A, "a person 'suffering from abuse' by a 'family or household member' may seek protection from such abuse by application to the court for an order requiring the defendant (among other measures) to refrain from abusing or contacting the victim." Carroll v. Kartell, 56 Mass. App. Ct. 83, 85 (2002), quoting from G. L. c. 209A, § 3, as amended through St. 1998, c. 179, § 5. " 'Abuse' is defined by the statute as acts '(a ) attempting to cause or causing physical harm; (b ) placing another in fear of imminent serious physical harm; [or] (c ) causing another to engage involuntarily in sexual relations by force, threat or duress.' " Carroll v. Kartell, supra, quoting from G. L. c. 209A, § 1, as amended through St. 1996, c. 450, § 232.
Subsection (b ), which is the relevant part of the definition in this case, "closely approximates the common-law description of the crime of assault, and we are guided by the law of that crime." Carroll v. Kartell, supra at 86. "When a person seeks to prove abuse by 'fear of imminent serious physical harm,' our cases have required in addition that the fear be reasonable." Iamele v. Asselin, 444 Mass. 734, 737 (2005). "Accordingly, we consider whether 'the actions and words of the defendant placed [the plaintiff] in reasonable apprehension that physical force might be used against her.' " Carroll v. Kartell, supra, quoting from Commonwealth v. Robicheau, 421 Mass. 176, 181 (1995). "The standard for determining whether a defendant's acts rise to the level of abuse, however, is not subjective. Rather, the court looks to whether the plaintiff's apprehension that force may be used is reasonable." Carroll v. Kartell, supra at 87.
The judges did not abuse their discretion by finding that the defendant's escalating conduct toward the plaintiff, culminating with the incident on March 3, caused the plaintiff to reasonably fear imminent serious physical harm. The plaintiff described violent and abusive episodes leading up to her decision to end the marriage (she filed for divorce in the time between the two hearings). In the days leading up to the issuance of the ex parte order, the defendant's behavior had become increasingly erratic, paranoid, and possessive in response to the plaintiff's estrangement. The behavior culminated with the defendant, after being asked to leave the plaintiff alone, seeking her out where she had met a friend. He then followed her to her workplace, and when he was again asked to leave, he instead got into her car demanding that she speak with him. The defendant's behavior "combined ... to create a picture of a volatile situation in which the possibility of physical abuse was present." Commonwealth v. Gordon, 407 Mass. 340, 350 (1990). The fact that the defendant obeyed the 209A order between March 3 and April 5 "is not a ground for refusing an extension of the initial order." Iamele v. Asselin, supra at 738.
The defendant likens his conduct to that of the defendant in Carroll v. Kartell, supra at 84-85, who made "insistent" attempts to speak with the plaintiff at a brunch at the Museum of Science and, when rebuffed, "demanded" to telephone her that evening. However, unlike Kartell who, when asked to leave the plaintiff alone, responded by writing her a letter-rather than call her on the telephone, which, he wrote, "[she] might regard as intrusive," ids="626934" index="13" url="https://cite.case.law/mass-app-ct/56/83/#p85">id. at 85-the defendant here followed the plaintiff to work and when he was again asked to leave her alone, got into her car. The plaintiff did not describe mere "[g]eneralized apprehension, nervousness, feeling aggravated or hassled," Woolridge v. Hickey, 45 Mass. App. Ct. 637, 639 (1998), but rather pointed to a pattern of escalating conduct and a specific instance that now placed her in imminent fear of serious physical harm. Her fear, when viewed in light of the "totality of the circumstances of the parties' relationship," Vittone v. Clairmont, 64 Mass. App. Ct. 479, 486 (2005), quoting from Iamele v. Asselin, supra at 740, was objectively reasonable.
We conclude that the judges did not abuse their discretion or err as a matter of law in determining that the defendant's conduct "created an apprehension of imminent serious physical harm on the part of [the plaintiff] that was objectively reasonable." Ginsberg v. Blacker, 67 Mass. App. Ct. at 143. The first judge had a sufficient basis for extending the ex parte 209A order for thirty days, and the second judge, for extending it for one year.
Orders entered March 13, 2017, and April 5, 2017, affirmed.

We assume, without deciding, that the issuance of the second order after notice does not render moot the appeal from the issuance of the first order after notice. Compare C.R.S. v. J.M.S., 92 Mass. App. Ct. 561, 563-566 (2017) (issuance of order after notice renders appeal of prior ex parte order moot).