NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-360                                          Appeals Court

VANNA V. vs. TANNER T.

No. 22-P-360.

Essex.     January 10, 2023. – April 28, 2023.

Present:  Sullivan, Shin, & Hodgens, JJ.

Abuse Prevention.  Protective Order.


Complaint for protection from abuse filed in the Salem
Division of the District Court Department on September 3, 2021.

A motion to extend a protective order was heard by Randy S.
Chapman, J.


Amy T. Sollins for the defendant.
Vanna V., pro se.


HODGENS, J.  Pursuant to G. L. c. 209A, the plaintiff filed

a complaint for protection from abuse.  She alleged that the

defendant (her former husband) placed her in fear of imminent

serious physical harm.  A District Court judge issued an ex

parte abuse prevention order against the defendant.  Following

an evidentiary hearing with the defendant present and

represented by counsel, another District Court judge extended the abuse prevention order for one year.  On appeal, the defendant challenges the extension of the order, contending that the evidence was insufficient and the judge misapplied the law. We affirm.

Background.  At the extension hearing on September 13, 2021, the plaintiff presented evidence of the parties' marital history, prior abuse by the defendant, e-mail correspondence, events at a recent family wedding, and the recent acts of vandalism that precipitated these proceedings.  The judge heard the testimony of the plaintiff and two of her three adult children, as well as the testimony of the defendant, who denied any acts of vandalism or prior abuse (apart from grabbing the plaintiff's arm in 2004).  The judge credited the plaintiff's evidence showing a history of domestic violence.

According to that evidence, the parties' nearly thirty-five year marriage included a long history of abuse perpetrated by the defendant.  The parties were divorced in 2010.  During the marriage, the plaintiff "endured significant financial, psychological and physical abuse" by the defendant, including being raped in 1980, thrown against a door in 1979 or 1980, and pushed against a wall in 1986.  In July of 2004, the defendant tried to break her arm during a struggle for a set of keys.  A criminal charge of assault and battery resulted from the 2004

incident, but the case was continued without a finding for six months and then dismissed.  The physical abuse ended when the parties divorced in 2010.  Since that time, the plaintiff tried "not to engage" with the defendant and tried to "make sure he kn[e]w[]" that she would not engage with him.  The plaintiff and the defendant saw each other at a graduation in 2017 and did not see each other again until their son's wedding four years later.

In June of 2019, the defendant initiated contact through an e-mail message that was rebuffed as unwelcome.  The defendant sent the e-mail message to the plaintiff and their children and wrote, "I want to take this opportunity to apologize to all of you for my actions that contributed to our family falling apart."  He asked for a chance to "respect and love" one another and to "respect our differences."  Both the plaintiff and one son sent replies rejecting this overture, and the plaintiff asked that she "not . . . be included in any further group emails."  Two years later, in August of 2021, the defendant sent another e-mail message to this son, who was to be married within weeks.  In that e-mail message, the defendant expressed sadness at how his son had treated him, and he asked if he was being invited to the wedding just to create the "appearance" of love and respect.  Once again, the defendant made overtures about improving their father-son relationship.  The son viewed the e-

mail message as an effort "to control" him and to blame his mother for the family problems.

The son's wedding in the summer of 2021 became a source of tension. The defendant attended the wedding, but according to the parties' children he played an insignificant role and appeared "slighted" and "withdrawn." One of the sons believed that the defendant had been "more upset recently than he has been in a while." Specifically, the defendant appeared "upset[]" due to his "lack of a central role in the wedding." By contrast, the plaintiff appeared to be "engaged" in the wedding activities and was "enjoying herself."

Two days after the wedding, the plaintiff awakened at 3 A.M. to noises outside her residence. Later that morning, the plaintiff went outside to drive to work and found that her car had been "vandalized in a very threatening way and in a really angry way." She saw the car, parked perpendicular to the sidewalk and residential street, displaying obscenities and a phallic symbol scratched into the paint. She testified at the extension hearing, "It [said] bitch, fuck you. And then all the panels were keyed around it with fuck you, and vomit was poured over every door. And the tire was slashed." The gas tank cover had been opened and sugar had been poured into the tank. A fence in front of the residence also displayed obscenities written in large letters. The fence faced the residential

street as well as the middle school where the parties' children had been students.  As a result of the vandalism, the plaintiff contacted the police, photographed the property damage, stayed at the residence at night while accompanied by one of her sons, and installed a security system.  This vandalism incident prompted the plaintiff to seek the abuse prevention order.

After hearing the plaintiff's evidence as well as the defendant's testimony (in which he denied all allegations of abuse apart from grabbing the plaintiff's arm in 2004), the judge extended the abuse prevention order for one year.  He specifically credited the "history of domestic violence" as well as the observations and concerns expressed by the two sons.  He noted that the vandalism (supported by photographic evidence) demonstrated a "level of hostility," "appear[ed] to be targeted to somebody," was not "random," and "pointed at the [d]efendant."  The judge concluded that the plaintiff "ha[d] sustained her burden by a preponderance of the evidence."

Discussion.  General Laws c. 209A "provides a statutory mechanism by which victims of family or household abuse can enlist the aid of the State to prevent further abuse." Commonwealth v. Gordon, 407 Mass. 340, 344 (1990).  "Abuse" is defined in the statute as "the occurrence of one or more of the following acts between family or household members:  (a) attempting to cause or causing physical harm; (b) placing

another in fear of imminent serious physical harm; [or] (c) causing another to engage involuntarily in sexual relations by force, threat or duress."  G. L. c. 209A, § 1.  Here, the plaintiff alleged that the defendant placed her in fear of imminent serious physical harm.[1]  Fear that force may be used must be "reasonable" and more than "subjective and unspecified." Vittone v. Clairmont, 64 Mass. App. Ct. 479, 486 (2005), quoting Carroll v. Kartell, 56 Mass. App. Ct. 83, 86-87 (2002).  The plaintiff bears the "burden of proving by a preponderance of the evidence that she is suffering from abuse" under c. 209A. Noelle N. v. Frasier F., 97 Mass. App. Ct. 660, 664 (2020).

On appeal, the defendant faults the judge for (1) applying the wrong legal standard, (2) attributing nonthreatening vandalism to the defendant, and (3) issuing an order based upon past abuse that was too remote in time.  "We review . . . for an abuse of discretion or other error of law."  Noelle N., 97 Mass. App. Ct. at 664, quoting E.C.O. v. Compton, 464 Mass. 558, 561-562 (2013).  After reviewing the record, we discern no "clear error of judgment" or error of law in the judge's decision to extend the order (citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

---

[1] Because the plaintiff sought relief under the "fear of imminent serious physical harm" definition of abuse under G. L. c. 209A, § 1, we do not address the alternative definitions.

Contrary to the defendant's claim, the record shows that the judge applied the correct legal standard. The defendant contends that the judge simply extended the abuse prevention order because he concluded that the defendant vandalized the plaintiff's car. The transcript of the hearing, however, shows that the judge properly focused on the plaintiff's "burden of proving by a preponderance of the evidence that she is suffering from abuse" under G. L. c. 209A. Noelle N., 97 Mass. App. Ct. at 664. At the beginning of the hearing, the judge told the plaintiff, who was self-represented, "You can call any witnesses that you want. The burden of proof is always on the [p]laintiff in these matters to prove by a preponderance of the evidence or prove that it's more probable than not that you need the protection." The judge's questioning of the plaintiff showed that he was focused on the central issue of abuse under G. L. c. 209A: "What incident or incidents occurred that have placed you in fear?" "[D]id anyone hear him make any threats of any kind or express his anger about your happiness?" "[W]hen was the last incident of physical abuse that occurred?" "So what you're alleging is during the marriage, there was a long history of abuse." "Has that [vandalism] placed you in imminent fear of serious bodily injury?" In closing argument to the judge, defense counsel also emphasized the plaintiff's burden to prove "fear of imminent serious physical harm" and conceded that proof

of the defendant being "connected to the vandalism" might meet that standard.  Thus, the record shows that the judge remained faithful to the correct legal standard under G. L. c. 209A, § 1.

The judge permissibly found by a preponderance of the evidence that the defendant committed the vandalism, given its timing on the heels of the wedding and its targeted nature.  In determining whether the plaintiff met her over-all burden of proving abuse, the judge properly viewed this evidence of vandalism within the context of the entire relationship rather than just "standing alone or in a vacuum."  Vittone, 64 Mass. App. Ct. at 486.  During the marriage, the plaintiff suffered repeated instances of violence, including sexual violence. After the marriage ended in 2010, the plaintiff avoided engaging the defendant.  In 2017, the plaintiff and the defendant saw each other at a graduation and did not see each other again until their son's wedding four years later.  In 2019, the plaintiff and the son rebuffed the defendant's e-mail effort to resume a family relationship.  Just weeks before the vandalism in 2021, the defendant made yet another unsuccessful effort to reach out to the son who was getting married.  The wedding left the defendant in a marginalized role where he appeared "slighted," "withdrawn," and "more upset" than he had been in a while.  The vandalism occurred just two days after the defendant had been in the plaintiff's presence after not having seen her

for four years.  As the judge permissibly found, the vandalism revealed a level of hostility that was not random, and as the plaintiff points out in her brief, the vandalism was "sexualized" and designed to cause "harm and terror" by reawakening "years of trauma."

Viewing this targeted vandalism within "the totality of the circumstances of the parties' relationship," Iamele v. Asselin, 444 Mass. 734, 740 (2005), the judge could reasonably conclude that the plaintiff was in "fear of imminent serious physical harm."  G. L. c. 209A, § 1.  The evidence showed a long history of abuse, rejection of the defendant after his attempts to communicate, emotional turmoil from a wedding, and targeted vandalism.  Based on this series of escalating events, the judge could reasonably conclude the defendant's hostility "had never subsided," Vittone, 64 Mass. App. Ct. at 489, and the extreme vandalism to the plaintiff's car, in the early morning hours at the plaintiff's residence, could be a precursor to physical violence and fully justified the plaintiff's "fear of imminent serious physical harm."  G. L. c. 209A, § 1.  See Pike v. Maguire, 47 Mass. App. Ct. 929, 930 (1999) (reasonable fear of physical harm from "smashing of the plaintiff's family vehicle's windshield").

The judge properly gauged whether the plaintiff's fear of the defendant was "reasonable."  Iamele, 444 Mass. at 737.  To

establish the reasonableness of this fear, "it is not necessary that there be a history -- or even a specific incident of physical violence." Noelle N., 97 Mass. App. Ct. at 665. Although not required, the record here contains evidence of both a history and specific incidents of physical violence. The judge found, "[T]here was a history of domestic violence that I do credit." Contrast Keene v. Gangi, 60 Mass. App. Ct. 667, 669 (2004) (insufficient evidence of abuse where "nothing in the record . . . that show[ed] a history of violence, threats, or hostility in the relationship"). Any dispute as to the history of abuse and the incidents of violence was for the judge to resolve. "We accord the credibility determinations of the judge who 'heard the testimony of the parties . . . [and] observed their demeanor,' . . . the utmost deference." Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140 n.3 (2006), quoting Pike, 47 Mass. App. Ct. at 929. Given the long history of violence and the detailed testimony of the plaintiff as credited by the judge, we see no error in the judge's conclusion that the plaintiff's fear was reasonable.

The judge did not extend the abuse prevention order based, as the defendant put it, "almost exclusively on a past history of abuse." As the foregoing demonstrates, the judge based his decision appropriately on "the totality of the circumstances of the parties' relationship." Iamele, 444 Mass. at 740. The

instant case is distinguishable from Dollan v. Dollan, 55 Mass. App. Ct. 905, 906 (2002), cited by the defendant.  In Dollan, the plaintiff sought an abuse prevention order against her mother who had physically, sexually, and emotionally abused her many years earlier when the plaintiff was a child and young teenager.  Id. at 905.  Unlike the instant case involving escalating events and significant, targeted vandalism, Dollan lacked any evidence of "conduct immediately preceding the issuance of the order" that would have placed the plaintiff in fear of imminent serious physical harm.  Id. at 906.  The judge's order here is not only well supported by the evidence but is also consistent with "the important public policy of preserving the fundamental right to be protected from the devastating impact of domestic abuse."  Callahan v. Callahan, 85 Mass. App. Ct. 369, 373-374 (2014).

In addition to the significant factual distinction with Dollan, we note that subsequent case law developments circumscribe the continuing vitality of that case.  In Dollan, the court noted that c. 209A limits the concept of abuse "to the present tense" and is focused on preventing imminent serious harm and "not merely responding to past abuse."  Dollan, 55 Mass. App. Ct. at 906.  That quoted language cannot be construed in a "rigid manner" that disregards or minimizes the significance of past abuse.  Vittone, 64 Mass. App. Ct. at 484.

To the contrary, prior abuse may "serve as the necessary backdrop for reaching a proper understanding of more recent words and behavior as well as for assessing the reasonableness of an applicant's fear of imminent serious physical harm." Id. at 487. Cf. Callahan, 85 Mass. App. Ct. at 374 (judge must appraise "the impact of the violence already inflicted" where extension is predicated on attempted or actual physical abuse or involuntary sexual relations).

Finally, the defendant's view of the parties' current relationship is not dispositive. Throughout his brief, the defendant downplays the tension. He emphasizes that the parties divorced a decade earlier, the children are all adults, the defendant is retired and sixty-seven years old, the divorce litigation has terminated, the physical abuse incidents are remote in time and most occurred when the defendant was in his twenties, the parties lack any contact, the family members all enjoyed the wedding, and the defendant did not show anger at the wedding. The judge heard this evidence but did not credit it. His assessment of the credibility and weight of the evidence will not be disturbed on appeal. The defendant's argument also overlooks the lingering malevolence of domestic violence. Abuse by a family member, almost invariably inflicted on those who are weaker and less able to defend themselves, "is a violation of the most basic human right, the most basic condition of

civilized society:  the right to live in physical security, free from the fear that brute force will determine the conditions of one's daily life."  <u>Custody of Vaughn</u>, 422 Mass. 590, 595 (1996).  "The infliction of some wounds may be so traumatic that the passage of time alone does not mitigate the victim's fear of the perpetrator."  <u>Vittone</u>, 64 Mass. App. Ct. at 489.

> <u>Order dated September 13, 2021, extending abuse prevention order affirmed</u>.