## April B. Callahan vs. Richard E. Callahan.

No. 13-P-178.

Hampden. April 2, 2014. - May 28, 2014.

Present: Grasso, Kafker, & Graham, JJ.

*Abuse Prevention.*

A Probate and Family Court judge did not err in extending an abuse preven-
tion order under G. L. c. 209A, in circumstances in which the defendant
was also serving a prison sentence for crimes of violence against the
plaintiff, where, given that the situation before the judge was not a case
predicated on fear of imminent serious physical harm, but rather one
involving actual physical violence (i.e., the abuse was the physical harm
caused to the plaintiff), and that the judge reasonably could conclude that
there was a continued need for the order because the damage resulting
from that physical harm affected the victim even when further physical at-
tack was not reasonably imminent given the defendant's incarceration, the
judge concluded, based on the totality of the circumstances viewed in light
of the initial order, that extending the order for an additional year furthered
the legislative purpose of protecting an abuse victim from the impact of
family violence. [372-378] Graham, J., concurring.

Complaint for protection from abuse filed in the Hampden
Division of the Probate and Family Court Department on July
6, 2010.

Motions to extend and to modify or terminate an abuse preven-
tion order were heard by *David G. Sacks*, J.

*Richard E. Callahan*, pro se.

Grasso, J. At issue is whether a Probate and Family Court
judge abused his discretion in extending (and refusing to modify
or terminate) an abuse prevention order issued under G. L.
c. 209A when the subject of that order was also serving a prison
sentence for crimes of violence against the plaintiff who ob-
tained the order. We conclude that the judge did not err and
affirm.

1. *Background.* On July 6, 2010, April B. Callahan sought

and received an abuse prevention order against her then husband, Richard E. Callahan, in the Hampden Division of the Probate and Family Court.[1] The order directed Richard to refrain from abusing April and to vacate and remain away from the marital home, awarded April physical custody of their minor child, and provided visitation to Richard. On July 19, 2010, April moved to amend the order to include no contact with the child. After a hearing at which both parties were present, a judge allowed the motion, modified the order, and continued the matter for further hearing on August 4, 2010.

Later in the day on July 19, 2010, Richard violated the order and was arrested for crimes of violence against April, discussed at greater length below. Although held on bail, Richard appeared at the modification hearing held on August 4, 2010, at which the judge scheduled a review of the order modifications for September 22, 2010.[2] On September 22, 2010, after further hearing at which both parties appeared, a judge modified the order to include a provision directing Richard not to contact April, to stay twenty-five yards away from her, and to stay away from her workplace. As so modified, the order extended to July 6, 2011, which marked one year from the date of the initial order.

On July 6, 2011, the abuse prevention order was extended for an additional year, until July 5, 2012. A day later a decree of divorce nisi between the parties entered in the Hampden Division of the Probate and Family Court.[3]

On January 18, 2012, Richard pleaded guilty in Superior Court to multiple indictments as part of a plea agreement. On convictions of criminal harassment (subsequent offense) and intimidation of a witness, he received a sentence of from four years to four years and one day in State prison, and on convictions of assault and battery, two counts of violating an abuse prevention order, and threats, he received concurrent house of

---

[1]For ease of reference we refer to each party by his or her first name.

[2]Although continuously held in custody after his arrest in July, 2010, Richard appeared at subsequent hearings pursuant to writs of habeas corpus ad testificandum.

[3]The divorce decree did not permit Richard visitation with the minor child. In his July, 2012, motion to modify or terminate the abuse prevention order, Richard advised the judge that he was awaiting a hearing on his motion for visitation.

correction sentences.[4] In addition, Richard was placed on probation (concurrent with, and from and after, his committed sentences) on multiple charges of breaking and entering. Richard's terms of probation included orders for global positioning system monitoring, to stay away from and have no contact with April or with the minor child (unless otherwise determined by the Probate and Family Court), to abide by the abuse prevention order, to engage in batterer's intervention, and to undergo a psychological evaluation and any treatment, medication, and counselling deemed appropriate.

On July 5, 2012, roughly six months after Richard's sentencing, April sought an extension of the expiring abuse prevention order. Richard opposed the extension and sought to modify or terminate the order. Richard asserted that there was no longer a lawful basis to extend the order because April could not reasonably be in "fear of imminent serious physical harm" from him since he was incarcerated and also under probationary conditions that mirrored those of the abuse prevention order. A probate judge held a hearing at which both parties testified. In addition, April recounted the serious nature of his crimes against her and provided a letter from the district attorney's office detailing the disposition of the indictments against Richard. April related that despite Richard's incarceration, she was still in daily fear of him because he had broken into her house, tried to kill her, assaulted and beat her older son, and threatened to cut her throat in front of the children if her older son ran for help. She noted that Richard had violated two abuse prevention orders she had obtained against him and had also violated abuse prevention orders previously obtained by others. April told the judge that without the protection of an abuse prevention order, she was fearful that Richard could write her letters and telephone her. For his part, Richard maintained that the judge lacked a legal basis to extend the order because any fear of "imminent serious physical harm" was unreasonable since he was incapable of physically harming April while incarcerated, and the conditions

---

[4]Indictments alleging assault with intent to murder, stalking in violation of an abuse prevention order, reckless endangerment of a child, resisting arrest, and intimidation of a witness were dismissed upon acceptance of Richard's pleas. Another charge of resisting arrest and a charge of assault and battery on a police officer were each continued without a finding for five years.

of his probation provided her with the same protections as an abuse prevention order.

After considering the testimony, evidence (including Richard's criminal offender record information [CORI] and court activity record information [CARI][5]), and arguments, the judge found and ruled:

> "Motion denied after hearing (both present and order extended). While deft. is incarcerated, the plff. is clearly and palpably in fear of *any* contact from him, even telephone or letter. A serious assault took place resulting in Superior Court conviction and sentencing. While it is true deft. cannot assault pltff. from prison, any contact or fear of same will diminish sense of security provided by the order. See CARI/CORI and 1/25/12 letter from Dist. Atty. re charges."

2. *Discussion.* Whether seeking an initial abuse prevention order under G. L. c. 209A or a later extension, the burden is on the plaintiff to establish facts justifying issuance, or continuance, by a preponderance of the evidence. See *Iamele* v. *Asselin*, 444 Mass. 734, 736 (2005) (*Iamele*); *MacDonald* v. *Caruso*, 467 Mass. 382, 386 (2014). See also *Mitchell* v. *Mitchell*, 62 Mass. App. Ct. 769, 782 (2005) (proper to extend order set to expire upon showing of "continued need" without showing of new abuse); G. L. c. 209A, § 3.[6] Richard does not dispute that the initial order was properly issued or that it was predicated on his causing physical harm to April. See G. L. c. 209A, § 1.[7] Nor does he dispute that prior extensions of that order were proper. Rather, he argues that the judge erred in granting the

---

[5]Although referenced by the judge, these do not appear in Richard's record appendix.

[6]General Laws c. 209A, § 3, as amended through St. 1990, c. 403, § 3, provides in relevant part: "If the plaintiff appears at the court at the date and time the order is to expire, the court shall determine whether or not to extend the order for any additional time reasonably necessary to protect the plaintiff or to enter a permanent order."

[7]"Abuse" as defined in G. L. c. 209A, § 1, as amended through St. 1990, c. 403, § 2, consists of "one or more of the following acts . . . : (a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; (c) causing another to engage involuntarily in sexual relations by force, threat or duress."

July, 2012, extension (and denying his motion to modify or terminate) because a necessary prerequisite to extension, fear of "*imminent* serious physical harm" by April, was lacking since he was in prison. Put differently, he argues that even if April may be in fear of him, she may not reasonably be in fear of "*imminent* serious physical harm" as his incarceration renders any such fear unreasonable.[8] We disagree.

" 'Abuse' has the same statutory definition in the context of initial, extended, and permanent orders." *Vittone* v. *Clairmont*, 64 Mass. App. Ct. 479, 485 (2005). While G. L. c. 209A, § 1, provides that the abuse for which a protective order may issue can take several forms, the only form of abuse applicable here is that which is defined as "causing physical harm." Compare *Iamele, supra* at 739-740; *Smith* v. *Jones*, 75 Mass. App. Ct. 540, 543 (2009). The central flaw in Richard's argument is that it ignores the statutory distinction in the definition of "abuse" between abuse resulting from "causing physical harm" and abuse caused by "placing another in fear of imminent serious physical harm." G. L. c. 209A, § 1. See *Iamele, supra* at 739-740 & n.3 ("typically, the inquiry will be whether the plaintiff has a reasonable fear of 'imminent serious physical harm,' " but "[i]f a plaintiff were suffering from attempted or actual physical abuse or involuntary sexual relations, there is no question that an extension should be granted" [citations omitted]). See also *MacDonald* v. *Caruso*, 467 Mass. at 386, quoting from *Iamele, supra* at 735 ("most commonly" extension of order requires showing of fear of imminent serious physical harm). The situation before the judge in this instance is not a case predicated on "fear of imminent serious physical harm," but one involving actual physical violence. See *Iamele, supra* at 740 n.3.

General Laws c. 209A embodies the important public policy of preserving the fundamental right to be protected from the

---

[8]In sending notice of oral argument to Richard, the panel learned that he was released from incarceration in January, 2014. After notice, Richard appeared and argued before us, and advised the panel that he remains on probation. While we note Richard's recent release from incarceration, our analysis of the propriety of the judge's ruling does not turn on that development. The likelihood of Richard's release was not brought to the probate judge's attention, nor was that fortuity contemplated in his analysis.

devastating impact of domestic abuse. See *MacDonald* v. *Caruso*, *supra* at 385-386. Although a person seeking an abuse prevention order (and extension) based on "fear of imminent serious physical harm" must always show that he or she is currently in fear of imminent serious physical harm, and that such fear is reasonable, see *Iamele, supra* at 737, the same is not true of a person who seeks an order (or extension) based on having already been subject to physical harm. In that circumstance, the "abuse" is the physical harm caused, and a judge may reasonably conclude that there is a continued need for the order because the damage resulting from that physical harm affects the victim even when further physical attack is not reasonably imminent because the perpetrator is incarcerated. See *Vittone* v. *Clairmont*, 64 Mass. App. Ct. at 489 (some wounds so traumatic that passage of time alone does not mitigate victim's fear of perpetrator).

That is not to say that a judge must always extend an order predicated on physical abuse on request. It simply means that the failure of the plaintiff to have an objectively reasonable fear of *imminent* serious physical harm does not by itself preclude extension of an abuse prevention order. Faced with an extension request in such a circumstance, the judge must make a discerning appraisal of the continued need for an abuse prevention order to protect the plaintiff from the impact of the violence already inflicted. The judge must consider the totality of the parties' relationship and the legislative purpose of preserving "the fundamental human right to be protected from the devastating impact of family violence." *Iamele, supra* at 740, quoting from *Champagne* v. *Champagne*, 429 Mass. 324, 327 (1999). In making the required assessment, the judge must consider the basis for the initial order in evaluating the risk of harm to the plaintiff should the order expire. Among the nonexclusive factors the judge should consider are "the defendant's violations of protective orders, ongoing child custody or other litigation that engenders or is likely to engender hostility, [and] the parties' demeanor in court. . . . No one factor is likely to be determinative. . . . It is the totality of the conditions that exist at the time that the plaintiff seeks the extension, viewed in the light of the initial abuse prevention order, that govern." *Iamele, supra.*

In evaluating whether April met her burden of establishing the continued need to protect her from the physical "abuse" inflicted by Richard, the judge appropriately considered the totality of the circumstances of their relationship as directed by *Iamele, supra.* See *Vittone* v. *Clairmont,* 64 Mass. App. Ct. at 486-489. To that end, the judge considered Richard's serious and violent criminal offenses against April and her older son, his prior violations of abuse prevention orders involving her and others, the ongoing child custody litigation in Probate and Family Court regarding visitation with the younger child, and the hostility likely engendered thereby.[9] See *ibid.* The judge reviewed Richard's CORI and CARI records and a letter from the Hampden County district attorney's office regarding the recent criminal charges. Finally, the judge observed the parties' demeanor, and came away convinced that April's fear of Richard was clear and palpable and that her sense of security would be substantially diminished were the order to expire, leaving Richard free to contact her by letter or telephone. Based on the totality of these circumstances, viewed in light of the initial abuse prevention order, the judge concluded that extending the order for an additional year furthered the legislative purpose of protecting an abuse victim from the impact of family violence. See *Champagne* v. *Champagne,* 429 Mass. at 327. It is difficult to discern how such thoughtful and reasoned consideration amounts to an abuse of the "broad" discretion accorded a judge at a renewal hearing. See *Crenshaw* v. *Macklin,* 430 Mass. 633, 635 (2000); *Vittone* v. *Clairmont,* 64 Mass. App. Ct. at 485.

Nothing in *Vittone* v. *Clairmont, supra,* on which Richard relies, is to the contrary. There, in somewhat unusual circumstances, the court upheld the imposition of a permanent abuse prevention order against a defendant who was about to be released after eight years of imprisonment for crimes of sexual abuse against two of his children.[10] The defendant argued that the judge erred in entering a permanent abuse prevention order

---

[9]That Richard was also under probationary conditions that mirrored those of the abuse prevention order did not detract from the judge's authority to extend the order. See G. L. c. 209A, § 7, inserted by St. 1983, c. 678, § 5 ("Criminal remedies provided herein are not exclusive and do not preclude any other civil or criminal remedies").

[10]Before the defendant was incarcerated for abusing his children, an abuse

where the only evidence supporting a reasonable fear of serious physical harm was conduct that occurred more than eight years earlier and involved victims other than the plaintiff. He also argued, as does the defendant here, that the statute requires evidence of recent words or conduct that would place a person in reasonable fear of imminent serious physical harm. In rejecting his claim, the court observed, "Neither the evidence that was before the judge . . . nor the law . . . is circumscribed in the rigid manner that the defendant suggests." *Id.* at 484. Treating the plaintiff's request for a permanent abuse prevention order as one for extension of an order predicated on "placing another in fear of imminent serious physical harm," under G. L. c. 209A, § 1, the court concluded that the plaintiff's fear of imminent serious physical harm was objectively reasonable in light of all the circumstances, including not only the defendant's imminent release, but also the compelling factor that "[t]he infliction of some wounds may be so traumatic that the passage of time alone does not mitigate the victim's fear of the perpetrator." *Id.* at 489.

To the extent Richard relies on *Vittone* v. *Clairmont* for the proposition that fear of imminent serious physical harm is always a requisite for extension of an order, regardless of its statutory basis, his reliance is misplaced. Indeed, that case is readily distinguishable as, there, no abuse prevention order had been extant for eight years, the convictions for which the defendant was incarcerated did not involve the plaintiff, and the "abuse" upon which the order was predicated was "fear of imminent serious physical harm." Here, by contrast, the abuse prevention order had been in continuous existence at the time of the extension hearing, Richard's incarceration stemmed from his violation of a restraining order taken out by April, and the underlying "abuse" involved Richard "causing [April] physical harm." See *Iamele*, 444 Mass. at 739-740. Similarly misplaced is Richard's contention that *Vittone* v. *Clairmont*, 64 Mass. App.

---

prevention order had been in place based on his physical and sexual abuse of the plaintiff during their marriage. That order lapsed when the plaintiff did not seek to have it renewed while the defendant was incarcerated. After being notified the defendant was about to be released from prison, the plaintiff sought an abuse prevention order. See *Vittone* v. *Clairmont*, 64 Mass. App. Ct. at 481 n.3.

Ct. at 485 n.7, stands for the proposition that extension of an order is not possible when its subject is incarcerated because "imprisonment is, if not the ultimate restraining order, at least its functional equivalent."[11] Viewed in context, the quoted statement stands as nothing more than an explanation for why the plaintiff there may have let the restraining order lapse for eight years before seeking renewal. To interpret *Vittone* as holding that absent new threats of harm, an abuse prevention order may not be extended while its subject is incarcerated for abusing the very victim who seeks the extension ignores the facts of that case, the important distinction arising from the different statutory bases of "abuse," and the reality that abuse occasioned by physical harm may cause wounds that produce long-lasting fear in the victim without new incitements. Compare *MacDonald* v. *Caruso*, 467 Mass. at 387, 390-391 (to terminate permanent abuse prevention order defendant must prove by clear and convincing evidence that protected party no longer has reasonable fear of imminent serious physical harm and significant changed circumstances make continuation of order no longer equitable).

Finally, we observe that the interpretation sought by Richard would turn the policy underlying c. 209A abuse prevention orders on its head. Were fear of "imminent serious physical harm" a sine qua non for extension of an order against a defendant who is imprisoned for physical abuse of the plaintiff, imprisonment would likely provide a victim less protection from abuse than existed before imprisonment, possibly subjecting the victim to unwanted letters, telephone calls, and other contact. Indeed, under such a statutory regime, the worse the physical harm inflicted, and the longer the resulting prison sentence, the less likely it would be reasonable for a victim to fear "imminent

---

[11]The court in *Vittone* also posited that "[g]iven the court's rescript opinion in *Jordan* v. *Clerk of the Westfield Div. of the Dist. Ct. Dept.*, 425 Mass. [1016,] 1017 [(1997)], there is some question whether a plaintiff in such circumstances could establish the 'imminence' of any serious physical harm from one who remains incarcerated." 64 Mass. App. Ct. at 485 n.7. We read *Jordan* as grounded in the fact that the plaintiff did not seek an order based on the defendant having caused her physical harm, but on his having placed her in fear of imminent serious physical harm while imprisoned. See 425 Mass. at 1017 n.3. In that posture, the plaintiff's testimony regarding the defendant's words or conduct that formed the basis of her complaint led the court to conclude that the complaint was unproved on the record before it.

serious physical harm." A plaintiff would need to endure unwanted telephone calls, letters, or other contact from the defendant in order to petition for a new abuse prevention order, and even then would face the same objection that the defendant's imprisonment rendered fear of *imminent* serious physical harm unreasonable. Such was obviously not the intent of the Legislature, which saw fit to specify that "[t]he fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for denying or failing to extend the order," and that "[a]ny action commenced under the provisions of this chapter shall not preclude any other civil or criminal remedies." G. L. c. 209A, § 3.

> *Order extending G. L. c. 209A order affirmed.*
>
> *Order denying motion to modify or terminate G. L. c. 209A order affirmed.*

GRAHAM, J. (concurring). At a hearing on a motion for an extension of an original abuse protection order pursuant to G. L. c. 209A, the inquiry is "whether the plaintiff has shown by a preponderance of the evidence that an extension of the order is necessary to protect her from the likelihood of 'abuse' as defined in G. L. c. 209A, § 1." *Iamele* v. *Asselin*, 444 Mass. 734, 739 (2005). In determining the issue, a judge must ascertain whether the plaintiff's "fear of imminent serious physical harm," G. L. c. 209A, § 1, is reasonable. "[F]actors that the judge should consider include, but are not limited to . . . the likelihood that the parties will encounter one another in the course of their usual activities (e.g., residential or workplace proximity, attendance at the same place of worship), and significant changes in the circumstances of the parties." *Iamele, supra* at 740.

The defendant argues that the plaintiff cannot satisfy the imminence requirement of the statute where he is incarcerated[1] and his release from prison was not imminent at the time of the

---

[1]The defendant also was placed on probation, forthwith and from and after the prison sentences. Both the forthwith and from and after probation included

extension hearing. See *Vittone* v. *Clairmont*, 64 Mass. App. Ct. 479, 485 n.7 (2005).[2] In *Vittone, supra,* we noted "[t]o the extent that imprisonment is, if not the ultimate restraining order, at least its functional equivalent, it is understandable that [the plaintiff] did not seek to renew the order or make it permanent at the time. . . . Further, given the court's rescript opinion in *Jordan* v. *Clerk of the Westfield Div. of the Dist. Ct Dept.,* 425 Mass. [1016,] 1017 [(1997)], there is some question whether a plaintiff in such circumstances could establish the 'imminence' of any serious physical harm from one who remains incarcerated." See *Smith* v. *Joyce,* 421 Mass. 520, 523 n.1 (1995) ("A judge must consider carefully whether serious physical harm is imminent [prior to issuing] . . . a G. L. c. 209A order"); *Dollan* v. *Dollan,* 55 Mass. App. Ct. 905, 906 (2002) ("We also read the Legislature's language in § 1 ['attempting,' 'placing,' and 'causing'] as revealing an intent to limit the definition of abuse to the present tense"); *Szymkowski* v. *Szymkowski,* 57 Mass. App. Ct. 284, 286-288 (2003); *Keene* v. *Gangi,* 60 Mass. App. Ct. 667, 669-671 (2004).

In my view, the above-referenced cases do not suggest that the defendant's confinement in prison at the time of the c. 209A extension hearing is outcome determinative but, rather, is one factor that the judge was required to, and did, consider when deciding whether to extend the order. On this record, the defendant has not demonstrated that the judge abused his discretion, and accordingly, I concur in the results.[3]

---

as conditions of probation that the defendant stay away and have no contact, direct or indirect, with the plaintiff and their child.

[2] In *Vittone,* 64 Mass. App. Ct. at 482, "[t]he plaintiff had been physically and sexually abused throughout the marriage and the defendant had been threatening to her during the marriage, after their separation, and during the period of time leading up to the trial." Moreover, while he was in prison, the defendant was held in contempt for having his mother put a lien on family property, and although the terms of his incarceration prohibited him from contacting the plaintiff, the defendant used the Internet and print media to blame the plaintiff for having falsely accused him of a crime. *Id.* at 482-483.

[3] The plaintiff and defendant had not been in contact since his arrest in 2010. In addition, there was no evidence presented at the extension hearing that the defendant's conduct in prison revealed an intent to abuse the plaintiff. However, "[t]he fact that abuse has not occurred during the pendency of an order shall not, in itself, constitute sufficient ground for denying or failing to extend the order." G. L. c. 209A, § 3.