After a hearing, a judge of the District Court declined to issue an abuse prevention order pursuant to G. L. c. 209A. The plaintiff, K.O., citing Callahan v. Callahan, 85 Mass. App. Ct. 369 (2014), appeals, arguing that the judge failed to apply the proper standard of proof, as outlined in that decision. We affirm.
Background. On January 27, 2017, the plaintiff applied for an ex parte abuse prevention order (order). The judge did not issue the order, but scheduled a hearing after notice. Three days later, both parties appeared, with counsel, before a different judge.
The plaintiff testified that both parties are natives of a western State, and had met while working the previous summer in the same office in Washington, D.C. They began a short dating relationship that lasted between June 11 and June 17, 2016, and ended in "[e]arly June." The plaintiff told the judge that she was seeking a restraining order against the defendant because she was "afraid of him due to actions that took place during the relationship." The plaintiff acknowledged that she has had no contact with the defendant since the relationship ended in June, 2016. However, she explained that she believed that the defendant would be transferring to the college she was attending in the Boston area. She also believed that she and the defendant would be living in the same city again during the upcoming summer, and would likely be in contact then.
In the plaintiff's supporting affidavit, she alleges two incidents of abuse that she says occurred at her apartment during the parties' relationship. Specifically, on one occasion, during sexual intercourse, the defendant bit her lip, producing a black and purple bruise, and also "forced his fingers inside of [her], not stopping when [she] cried out in pain." The plaintiff also testified that, three days later, again during intercourse, the defendant pulled her hair, forcing her head back, and placed his other hand on her throat, "choking" her. She "was unable to speak, but clawed at [the defendant]'s hand and arm trying to make him stop." In response, the defendant removed his hand from her hair and put it "around" her neck together with the hand already there. After this, the plaintiff asked the defendant to leave her apartment, and he did.
The day after the second incident, the plaintiff told the defendant that they "needed to talk before anything else happened"; during a telephone conversation that day the defendant ended the relationship. The plaintiff testified that the incidents have caused her to suffer from anxiety, making her "afraid of human contact in such a nature. And it's just kind of followed [her] since." She also testified that, after their meeting, she tried to avoid the defendant at work. She stated that she was then seeking a restraining order because she was still afraid of the defendant.
The defendant also testified, and confirmed that the relationship had lasted a little more than a week; he stated that the parties had "sex on a couple of occasions." He denied that he had caused the plaintiff any physical harm, and stated that he had made certain that, prior to having sexual relations, "consent was very clear." He stated that, had there been "[a]ny sort of indication that [he] received from her, pain, [he] would-you know, [he] would have absolutely backed off," and that he received no "verbal dis-consent or anything that would have-would have expressed that she was in pain or discomfort."[2] The defendant stated that, each time after the parties had sexual relations, the plaintiff's "attitude towards [him] didn't change at all." He also offered in evidence text messages from the plaintiff dated June 19, 2016, three days after the second incident, the day that the plaintiff and the defendant met in person.
The defendant testified that he had agreed to meet the plaintiff on June 19, 2016, to explain why he ended the relationship; he told her that he was "going through some emotional things at the time and [he] didn't want to enter into any sort of relationship or dating relationship where one of us would be emotionally vulnerable or the other one of us would be emotionally vacant. And so [he] wanted to call it off as soon as possible. And so [they] met." According to the defendant, the plaintiff would not accept his explanation, and instead tried to dissuade him from ending the relationship.[3] When the conversation became "cyclical" he "excused himself after [the parties] agreed that there was nothing else that either party had to contribute to the conversation." The defendant also testified that he did not intend to transfer to the plaintiff's school.
After hearing the testimony and reviewing the evidence, the judge found that the plaintiff's "fear [was] not a reasonable fear based on the circumstances after the incidents" and, as a result, declined to issue the restraining order. In the judge's view, the circumstances in Callahan, supra, differed from those here; specifically, the judge stated that, in this case "[t]here were incidents that occurred. I'm inferring that the incidents, if not consensual, when [the plaintiff] asked [the defendant] to leave he left, that [the plaintiff] sought him out after that for a conversation, an explanation."[4] The judge concluded that she understood that the plaintiff was "more than uncomfortable and not wanting to see [the defendant] again, and that [she's] afraid that [she] may see him and probably will see him in Washington again, but I'm finding that that is not a basis for me to-and it's not to extend a restraining order, it's for me to allow an initial restraining order." The plaintiff timely appealed.
Discussion. "Whether seeking an initial abuse prevention order under G. L. c. 209A or a later extension, the burden is on the plaintiff to establish facts justifying issuance, or continuance, by a preponderance of the evidence." Callahan v. Callahan, 85 Mass. App. Ct. at 372, citing Iamele v. Asselin, 444 Mass. 734, 736 (2005). In doing so, the plaintiff must prove "that the defendant has caused or attempted to cause physical harm, committed a sexual assault, or placed the plaintiff in reasonable fear of imminent serious physical harm." MacDonald v. Caruso, 467 Mass. 382, 386 (2014). See G. L. c. 209A, § 3. "In acting on an original G. L. c. 209A application ..., a judge has wide discretion, and can properly take into account the entire history of the parties' relationship ...." Smith v. Jones, 75 Mass. App. Ct. 540, 544 (2009) (citation omitted).
The plaintiff argues that the judge should have found that the defendant caused her physical harm or forced her to have sexual intercourse, and that this "abuse" warranted the issuance of an abuse protection order under G. L. c. 209A, §§ 1 and 3. Relying on Callahan, the plaintiff argues that the judge misapplied the standard in declining to issue the requested order; she claims that she was seeking the order under subsections (a ) and (c ) of the "abuse" definition, not under subsection (b ), requiring her to prove that the defendant had "plac[ed her] in fear of imminent serious physical harm." G. L. c. 209A, § 1.
It is true that, in Callahan, we held that a plaintiff may be granted an extension of an existing abuse prevention order based on past abuse; "a judge may reasonably conclude [in extending an existing order] that there is a continued need for the order because the damage resulting from that physical harm affects the victim even when further physical attack is not reasonably imminent because the perpetrator is incarcerated." Callahan, supra at 374, citing Vittone v. Clairmont, 64 Mass. App. Ct. 479, 489 (2005).
However, the Callahan facts are distinguishable from those in this case. In Callahan, the plaintiff was seeking an extension of an expiring order which had been issued based on a judge's previous finding that the plaintiff suffered physical abuse at the hands of her then husband. Id. at 375. Here, in contrast, the judge did not find the plaintiff's allegations of abuse credible, noting that she "sought [the defendant] out" after the alleged incidents occurred "for a conversation, explanation." The judge's endorsement on the (not issued) abuse prevention order stated, "After lengthy hearing the R.O. Denied-The contact was consen[s]ual-the Plaintiff reached out to [the defendant] after incident; the plaintiff states she is afraid but that is insufficient basis to allow R.O." At oral argument, the plaintiff claimed that the judge's endorsement was ambiguous. She argued that, in writing "contact was consensual" the judge was referring to the contact made by the plaintiff after the incidents. We disagree. Fairly read, we are satisfied that the judge found that the sexual contact during the alleged incidents was consensual.
As a result, we discern no error. Because the judge's findings of fact are based on credibility assessments and inferences drawn therefrom, findings that are uniquely within her province, we will not disturb them on appeal. Commonwealth v. Boucher, 438 Mass. 274, 275-276 (2002). See Mass.R.Civ.P. 52(a), as amended by 423 Mass. 1402 (1996).
Order denying abuse prevention order affirmed.

On the plaintiff's redirect examination, she confirmed that she had consented to some of the "activities," but that she clearly expressed to the defendant when she did not consent.

The plaintiff testified that she met with the defendant on June 19, 2016, because she "wanted to know why what happened had happened," but she felt he never offered her an explanation; she agreed to "meet in a public place" because she "was afraid for [her] safety at that point, but [she] thought [she] deserved an explanation."

The judge acknowledged that she understood the plaintiff's argument that the impact of the initial harm is what is relevant under Callahan.