NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-633

IDRIS I.

vs.

HAZEL H.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2021, the plaintiff obtained an abuse prevention order against the defendant, his former girlfriend, in District Court. On the defendant's appeal, we vacated that order on the grounds that she was not afforded due process at the hearing after notice. See Idris I. v. Hazel H., 100 Mass. App. 784, 791 (2022). On remand, a different judge denied the plaintiff's petition for an abuse protection order, and the plaintiff now appeals. We affirm.

Background. The parties met online in March 2017 and dated for a few months. They subsequently resumed a sexual relationship that lasted, on and off, until March 2020. The plaintiff alleges that the defendant raped him approximately twenty times beginning in March of 2018 and continuing for the next two years. According to him, the defendant frequently made

threats to harm herself or him, and he engaged in sexual intercourse with her only because of those threats.  He also alleges that she physically abused him by shoving him in the back once and by intentionally scratching him with her toenails during sex.

The parties last saw each other in person on March 10, 2020.  There was some slight contact between them by electronic means for the next month, at which time the contact ended with only limited exceptions.  In May and June 2020, the plaintiff made multiple entreaties to the defendant; the defendant responded on only one occasion and did so with a simple direct message:  "I don't want to be with you."  Then in July 2020, after the plaintiff again reached out to the defendant, the defendant let the plaintiff know that she had been admitted to McLean's Hospital.  The only subsequent contact the parties had was on March 1, 2021, when the defendant sent the plaintiff an e-mail about their past relationship.  Although that e-mail perhaps can best be described as one seeking closure (as the defendant herself explained at the initial hearing after notice), it had a triggering effect on the plaintiff.  According to him, it brought back the trauma he had suffered from the past alleged rapes, and as a result, he "live[s] with a constant and overwhelming sense of dread, and anxiety, and fear and powerlessness, that eats away at [him], and makes it difficult

2

to relax and enjoy [his] daily life." On this basis, he sought an abuse prevention order pursuant to G. L. c. 209A.

Having directly been accused of rape, the defendant chose to invoke her rights under the Fifth Amendment to the United States Constitution not to testify at the hearing on remand. As a result, the record consists of the plaintiff's testimony and documentary evidence of various communications between the parties (such as e-mails and text messages).

Discussion. The thrust of the plaintiff's appeal is that the judge necessarily abused his discretion in declining to issue a 209A order, because there was overwhelming, uncontested evidence that the plaintiff suffered extensive sexual abuse, physical abuse, and threats by the defendant. The central flaw in the plaintiff's argument is that the judge was not required to credit the plaintiff's allegations. See Commonwealth v. Gordon, 87 Mass. App. Ct. 322, 328 n.10 (2015) ("The absence of a conflict in the evidence does not mean that the [hearing] judge is required to credit the testimony"). Moreover, our review of the record reveals that the judge had a solid basis for his apparent rejection of the plaintiff's view of the facts. The following examples will suffice.

Contrary to suggestions from the plaintiff that the defendant was relentlessly pursuing sex with him, the record is replete with instances where he was the one seeking to convince

3

the defendant not to cut off contact with him. In addition, there are many examples throughout the period in question in which he was imploring her, sometimes in graphic terms, to continue to have sex with him. There was also evidence of his efforts to control her to an extreme degree. For example, he sent her a text message in 2019 stating his desire for her "[t]otal sexual obedience at all times, including domestic servitude, and having me make decisions about your appearance and eating. With reasonable allowances for physical discomfort, work, family, etc." The record also includes admissions by the plaintiff that he mentally abused the defendant by telling her that her "life doesn't matter" (while knowing that she suffered from mental health issues), and that he physically abused her by grabbing her arm and pulling her hair.[1] Finally, the evidence includes text messages in which the plaintiff implored the defendant to "come over and 'rape' [him]," and in which he expressed his fantasies about her "just barging in to take [him] sexually" because he would "LOVE it."

None of this is to say that the defendant was faultless in the relationship; she plainly was not. As the plaintiff highlights, the documentary record establishes that the

---

[1] Counterintuitively, the plaintiff claimed that in physically abusing the defendant in this manner, his "purpose was precisely to show [the defendant] that there would be no real violence."

4

defendant made some threats of physical harm to him. For example, most disturbingly, in February of 2020, she sent him a text message in which she expressed the "right to stab [him] in the eye." But even that threat takes on a different appearance when viewed in the context of the mutually toxic relationship that the parties had forged. Notably, on the very same day the defendant sent that message, the plaintiff e-mailed her: "I love you . . . . Please stop putting obstacles in our path" and requested that she "stop blocking" his attempts to reach out to her. Then, the following day, the plaintiff wrote to the defendant: "I think we can both agree you were out-of-pocket last night. I still miss you, though."[2]

Even with the plaintiff's having documented that the defendant had made some threats of physical violence, nothing required the judge to find that the defendant used those threats to rape the plaintiff.[3] See Vanna V. v. Tanner T., 102 Mass.

---

[2] The plaintiff sought to have the defendant criminally prosecuted for the alleged rapes, physical assaults, and threats. Although the Commonwealth initially had applied for a criminal complaint with respect to three text messages, including the one about the plaintiff's eye, it abandoned that effort after further investigation.

[3] For this reason, the plaintiff cannot rely on cases that recognize that once a party seeking an abuse prevention order has demonstrated that he or she has been the victim of actual physical harm or of a sexual offense, reasonable fear of imminent serious physical harm need not be also established. See, e.g., Callahan v. Callahan, 85 Mass. App. Ct. 369, 373-374 (2014).

App. Ct. 549, 554 (2023) ("Any dispute as to the history of abuse and the incidents of violence was for the judge to resolve"). Nor was the judge required to accept the plaintiff's testimony that any threats that were made placed him in objectively reasonable fear of imminent serious physical harm. See Iamele v. Asselin, 444 Mass. 734, 740-741 & n.3 (2005) (discussing what party seeking abuse prevention order must prove when the abuse alleged is based on threats and finding that "had the judge chosen not to credit [the plaintiff's] testimony" as to the "reasonableness or imminence of her fear[,] . . . he might have properly decided not to extend the order"). The hearing judge was in the best position to assess whether, in the totality of the circumstances, an abuse prevention order was warranted. See Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140 n.3 (2006) ("We accord the credibility determinations of the judge who heard the testimony of the part[y] . . . [and] observed [his] demeanor, the utmost deference" [quotation and citation omitted]). Especially where the parties had not seen each other in over two years, and had engaged in only very limited contact during that time, the judge did not abuse his

6

discretion when he declined to issue the requested order in May of 2022.[4]

Order denying abuse
   prevention order affirmed.

By the Court (Milkey, Walsh &
   Smyth, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered: June 1, 2023.

---

[4] In passing, the plaintiff claims that the judge abused his discretion by not allowing his counsel to pose specific questions to the defendant after she indicated her intention to invoke her Fifth Amendment rights. Where it was up to the judge, as fact finder, whether to draw any negative inferences against the defendant based on her invoking her Fifth Amendment rights, see Baxter v. Palmigiano, 425 U.S. 308, 318-320 (1976), the judge did not abuse his discretion in not subjecting the defendant to such interrogation. To the extent the plaintiff makes other arguments, they do not warrant further discussion. See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[5] The panelists are listed in order of seniority.