NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1328

A.M.

vs.

B.G. (and a consolidated case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a hearing, a judge of the District Court extended abuse prevention orders obtained by the plaintiff pursuant to G. L. c. 209A that prohibited the defendant from abusing his minor children and ordered the defendant to stay away and have no contact with them.  In this consolidated appeal, the defendant claims that the judge erred in failing to modify the no contact provision of the orders and, alternatively, in finding that the plaintiff presented sufficient evidence to support the extension orders.  Finding no error, we affirm.

Background.  On July 20, 2020, the plaintiff, the Department of Children and Families (department), filed separate

_____

[1] A.M. vs. B.G.

complaints seeking a restraining order on behalf of two minor children in its custody against the children's father, the defendant.[2] The plaintiff's supporting affidavit stated that the defendant's two children, whom we will call Tom and Sally, were in the department's temporary custody while living with the maternal grandmother and were in fear of the defendant. The affiant, the department's social worker assigned to the children's case (ongoing worker), reported that the children's mother was hospitalized due to domestic violence committed by the defendant. After the domestic violence incident, the defendant entered a detoxification program but checked himself out of the program after two days. He then stalked a family member he believed the children's mother was living with. The defendant drove to the maternal grandmother's home and stared at the children, causing Tom to immediately run inside the home and make sure all the doors and windows were locked. Tom then defecated himself seven times that day. A judge of the District Court granted an ex parte restraining order for each child, which included a no contact provision. The orders were extended on August 31, 2021, and again on August 30, 2022.

---

[2] On November 19, 2019, as a result of filing a petition under G. L. c. 119 § 24, the department was granted temporary custody of the children.

2

On August 30, 2023, a judge of the District Court conducted a hearing on the restraining order extension requests and the defendant's request to modify the conditions relating to contacting the children.  At the time of this hearing, because Tom was eight years old and Sally was four years old, the judge deemed the ongoing worker the plaintiff.  All parties were represented by counsel except for the children's mother, who by then was deceased from a cause unknown.  The plaintiff and the children called three witnesses:  the ongoing worker, the maternal grandmother, and a psychiatric nurse.  The defendant made an offer of proof that his therapist would testify about the defendant's progress in treatment if allowed.  The judge ruled that the therapist's testimony would be irrelevant to his determination whether the children's fear was reasonable and did not allow that witness to testify.  The defendant did not seek to admit any documentary evidence regarding his treatment for anger management, parenting, or domestic violence.  After a full hearing, the judge extended the restraining orders for a one-year term and denied the defendant's request to modify the no contact provision.  This appeal followed.

Discussion.  "The inquiry at an extension hearing is whether the plaintiff has shown by a preponderance of the evidence that an extension of the order is necessary to protect [them] from the likelihood of 'abuse' as defined by G. L.

3

c. 209A, § 1." <u>Iamele</u> v. <u>Asselin</u>, 444 Mass. 734, 739 (2009). A judge is to examine the totality of the circumstances of the parties' relationship, including the basis for the initial order as well as any changes in the relationship since the initial order. <u>Id</u>. at 740-741.

We review the grant of an extension of a c. 209A order "for an abuse of discretion or other error of law." See <u>Laytoya L.</u> v. <u>Kai K</u>., 104 Mass. App. Ct. 173, 177 (2024). See also <u>Idris I</u>. v. <u>Hazel H</u>., 100 Mass. App. Ct. 784,787 (2022).

Here, although the children did not testify, the judge heard unrebutted evidence that they remained fearful of the defendant. A review of the hearing testimony along with the affidavit submitted in support of the ex parte restraining orders reveals that when Tom was four years old, his mother was hospitalized due to domestic abuse committed by the defendant. Tom suffers from posttraumatic stress disorder (PTSD), is hypervigilant, is anxious, and suffers from nightmares. As Tom grew older, he was better able to verbalize the abuse he suffered by the defendant. Tom's clinician reported that since being removed from his home in 2019, Tom expressed to many people that he feared the defendant would kill his mother. On one occasion, Tom experienced an extreme reaction when he saw a metal nail file, and disclosed to his therapist that when he was four years old, he had touched something similar of the

4

defendant's.  As punishment, the defendant stripped Tom naked, put him in the bathtub, poured water over him until he couldn't breathe, and in Tom's words, "my dada tried to drown me."  Tom also told his therapist that he feared the defendant would kill his mother, and that he heard a voice resembling the defendant's voice in his head telling Tom that he was a "bad kid" who failed to protect his mother.

Testimony also established that Tom becomes agitated when thinking about the defendant, experiences nightmares and difficulty sleeping, and has a bedtime routine to ensure that the windows and doors are locked so that the defendant cannot enter the home and hurt him or Sally.[3]  Tom also displays other behaviors indicative of fear including generalized anxiety, overeating, defecating in his pants, and difficulty concentrating in school.  The defendant acknowledged to the department that the children feared him, and in the past, the maternal grandmother witnessed the defendant hit Tom.[4]

---

[3] The grandmother testified to the nighttime routine that Tom requires, which includes going from room to room including the basement to make sure all doors and windows are locked.  Tom "takes one of my kitchen chairs, and he secures it underneath the door handle" of the sliding glass door to make sure that the defendant cannot enter the home.  Tom also reposts the c. 209A order on the door for the police to see if they need to be called to the home.

[4] Sally, who was ten months old when the department took custody, has no memory of the defendant.  Sally is exposed to

5

Here, based on the totality of the circumstances, and considering the basis for the initial abuse prevention orders, the judge properly exercised his discretion in extending the orders for a one-year period without modification. At the hearing, the judge reviewed the court filings by both parties, heard testimony from the three witnesses, as well as arguments by counsel. The judge was warranted in finding, again based on unrebutted evidence, that Tom had been physically abused by the defendant in the past and that his ongoing fear was objectively reasonable. The evidence included numerous instances in which Tom was overcome and crippled with fear at the thought of the defendant and told several people that he feared the defendant would kill his mother. The defendant had committed violence against the mother and Tom by waterboarding him when he was four years old. The judge also heard unrebutted evidence from the maternal grandmother, who testified that she had witnessed the defendant abuse Tom in the past and that she believed both children were fearful of the defendant. In this case, the judge acted within his discretion in crediting the testimony of the maternal grandmother about the children's fear. See Noelle N. v. Frasier F., 97 Mass. App. Ct. 660, 665 (2020). The judge certainly could consider the fact that the defendant had

Tom's PTSD, which is exacerbated when the defendant is mentioned.

6

attended certain programs addressing domestic violence and substance use. The judge was not required, however, to agree with the defendant's contention that he no longer posed a risk to the children or that the children's fear was not reasonable. See Callahan v. Callahan, 85 Mass. App. Ct. 369, 374 (2014) (judge could "reasonably conclude that there is a continued need for the order because the damage resulting from that physical harm affects the victim even when further physical attack is not reasonably imminent"). Further, based on the evidence presented at the extension hearing, we find no abuse of discretion in the judge's finding that Sally had an objectively reasonable fear of serious bodily harm by the defendant. A person seeking the protection of a c. 209A order need not show that there was a specific incident of physical violence -- only that the fear of serious imminent harm is objectively reasonable. Noelle N., supra.

To the extent that the defendant claims that the judge erred by failing to modify the restraining orders to allow the defendant to contact the children in accordance with an order of the Juvenile Court as it relates to visitation, we are unpersuaded. As noted above, the defendant failed to offer any evidence to rebut the evidence that the children continued to have an objectively reasonable fear of imminent serious physical harm. The primary purpose of a restraining order is to protect

7

a party from harm or the fear of imminent serious harm.  See Mitchell v. Mitchell, 62 Mass. App. Ct. 769, 773-774 (2005). Here, based on the undisputed facts, the judge did not err in denying the motion to modify the no contact provision of the orders.[5]

Extension orders dated August
31, 2023, affirmed.

By the Court (Blake, Walsh &
Hodgens, JJ.[6]),

Paul Little

Clerk

Entered:  October 17, 2024.

---

[5] To the extent that the defendant argues that the District Court and Juvenile Court proceedings could result in inconsistent orders, we further note that the defendant never petitioned the judge of the Juvenile Court that the case be interdepartmentally assigned to the Juvenile Court under G. L. c. 211B, § 9 (xi).

[6] The panelists are listed in order of seniority.