NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-979

M.M.

vs.

M.J.M.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from an abuse prevention order entered on October 2, 2023, which required, among other things, that he not contact the plaintiff, his former wife, and that he stay at least one hundred yards from her unless the parties agreed by text to modify that distance.[1]  The defendant asserts that the judge abused her discretion because the evidence was insufficient to support a finding that the plaintiff had a reasonable fear of imminent serious physical harm.  We conclude that the judge did not err and affirm.

---

[1] In addition, the order provided that "[t]he 100 yard stay away is reduced to 50 yards for drop off and pick up of the child only."

Background.  On September 19, 2023, the plaintiff obtained

an ex parte abuse prevention order pursuant to G. L. c. 209A,

§ 3 (209A order) against the defendant.  Her complaint was

supported by two affidavits.  The first one is dated February

19, 2018, and was submitted in connection with a previous

complaint for protection from abuse filed on or about the date

the affidavit was signed.  In that affidavit, the plaintiff

averred:

> "My husband has been having an affair[] since last August.
> That is the date he gave me.  On Friday after being away 3
> days at a work trip (which was a lie), I told him I wanted
> a divorce.  He told me he loved me and already regretted
> it.  As the night went on, text messages became heated.  My
> son and I were locked in my room.  I went to talk to him to
> ask him to be kind throughout this for our son[']s sake,
> and he began screaming, shaking and turning red.  We became
> physical in the blink of an eye.  He then grabbed me hard
> and threw me out the door.  That is the bruising on my arms
> and knees.
>
> Last night I asked him to leave immediately.  I cried all
> day as I learned about his affair.  My friends are aware of
> his temper and on rotation stayed with me to ensure my
> safety.  When our paths did cross, it again got physical.
> After reaching for his phone, he jumped on [my] back.  I
> believe the result could be a broken rib, strained wrist
> and more bruising.  This is when the police were called."

Although the record is not entirely clear, it appears that an

abuse prevention order was issued and remained in effect for

approximately three and one-half years during which time the

parties were engaged in divorce proceedings.  At some point, the

209A order expired and was replaced with an order (the parties

refer to the order as an "agreement") issued by a judge of the

2

Probate and Family Court, which required the defendant to abide by the same or similar restrictions regarding his contact with the plaintiff. After the defendant announced to the plaintiff that he would no longer follow the restrictions contained within that order, the plaintiff sought an abuse prevention order by filing a complaint supported by a second affidavit, dated September 19, 2023, which states:

> "On or about Nov[ember] 9, 2021, the Defendant agreed to a probate order that applied the same rules as a [restraining order]. This was done only because our son was in Children's Hospital with an ongoing illness. The judge in Framingham suggested a one day lift. Due to the illness, we let it drop but I was told I could return if needed.
>
> During this time the probate agreement, which included [a] 50 yard distance, was mostly followed. He has told me he no longer will follow it and will do what he wants. He has made up stories about a [local] PD Sgt. to try and scare me. And despite my efforts to accommodate both of us at parent/teacher night tomorrow, he refuses to abide by our agreement. I remain in fear of this man."

Following an ex parte hearing held on September 19, 2023, at which the plaintiff was present and the defendant was not, a judge of the District Court issued an order which was set to expire on October 4, 2023.

On October 2, 2023, a hearing was conducted before a second judge to determine whether the order should be extended. Both parties were present, but only the plaintiff, who appeared without counsel, testified. In response to the judge's questions, the plaintiff affirmed that everything stated in both

3

affidavits was true and accurate.[2]  She further acknowledged that the parties did not always follow the stay away provision and explained that she overlooked it at times when it was in their son's best interest.  For example, as noted in her affidavit, the order was not followed when the parties' young son was hospitalized for a period of time.  On another occasion, the plaintiff agreed to be near enough to the defendant so that she could show him how to put pads in their son's football uniform.  Additionally, exceptions were made at various times so that both parents could attend special sporting events.  Nonetheless, the plaintiff maintained that she was in fear of the defendant.[3]  When the judge asked the plaintiff about that fear, she responded:  "I don't know if it ever goes away if somebody beats you.  I think that it will probably stay with me forever.  So I just want to be left alone."  The plaintiff also testified on cross-examination that the defendant had put her "in imminent

---

[2] In addition, the defendant did not dispute the fact that he falsely told the plaintiff that the officer who arrested him on a domestic violence complaint related to the original protective order had referred to the order as "crazy."  The defendant later sent the plaintiff a text message in which he stated:  "I didn't even speak to him [the officer], made that up.  I have no desire to ever speak to him.  He doesn't need to know our business.  Yes.  I made that up in the heat of the moment, not proud.  Sorry."

[3] Additionally, we remain unpersuaded by the defendant's suggestion that the plaintiff has used the court as a "tool" in an effort to gain an advantage in an acrimonious divorce.

4

fear for years" and that she was "currently in fear of him." She further stated that she will "always be in fear [of him] . . . [b]ecause he [the defendant] beat me numerous times." When further pressed by defense counsel, the plaintiff's responses regarding her fear of the defendant were consistent. At one point, she asserted "I am in fear of this man . . . all the time no matter how you [counsel] ask." The judge also considered a text exchange between the plaintiff and the defendant's new wife, wherein the plaintiff declined an offer to meet for coffee as she was "still fearful from all that had transpired."

As previously noted, the defendant did not testify. However, following argument of counsel, and after the judge found the plaintiff to be credible and had met her burden, the defendant requested permission to speak to the judge. He expressed frustration regarding the plaintiff's attendance at their son's games ("[the plaintiff is] notorious for showing up places I'm at anyway"). He also expressed concern for the future, asking the judge: "what happens when [the son] gets married, he has a graduation, she'll have this order[?]"

Discussion. "Whether seeking an initial abuse prevention order under G. L. c. 209A or a later extension, the burden is on the plaintiff to establish facts justifying issuance, or continuance, by a preponderance of the evidence." Callahan v.

5

Callahan, 85 Mass. App. Ct. 369, 372 (2014).  The defendant argues that because there were no incidents of physical abuse for the prior five years, the plaintiff failed to show that she had a reasonable fear of imminent serious physical harm.  However, our cases do not require a showing of imminent serious physical harm or new abuse where, as here, the alleged abuse stems from prior physical violence.  The flaw in the defendant's argument is similar to the one we recognized in Callahan.  It "ignores the statutory distinction in the definition of 'abuse' between abuse resulting from 'causing physical harm' and abuse caused by 'placing another in fear of imminent serious physical harm.'"  Id. at 373, quoting G. L. c. 209A, § 1.  As we explained in Callahan,

> "[a]lthough a person seeking an abuse prevention order (and extension) based on 'fear of imminent serious physical harm' must always show that he or she is currently in fear of imminent serious physical harm, and that such fear is reasonable, the same is not true of a person who seeks an order (or extension) based on having already been subject to physical harm.  In that circumstance, the 'abuse' is the physical harm caused, and a judge may reasonably conclude that there is a continued need for the order because the damage resulting from that physical harm affects the victim even when further physical attack is not reasonably imminent" (citation omitted).  Id. at 374.

Here, the case before the judge was not predicated solely on "fear of imminent physical harm," but also prior physical abuse.  The plaintiff averred and subsequently testified that she was in fear of her life based on that prior abuse.  The

6

judge explicitly found the plaintiff to be credible.  Given these circumstances, the judge did not abuse her discretion in concluding that the extension of the 209A order was necessary to "protect the plaintiff from the impact of the violence already inflicted."  Callahan, 85 Mass. App. Ct. at 374.[4]  Here, as in Callahan, we are satisfied that the judge considered "the totality of the parties' relationship [including the demeanor of the parties at the hearing] and the legislative purpose of preserving the fundamental human right to be protected from the devastating impact of family violence" (citation and quotation omitted).  Id.

> Order extending G. L. c. 209A order, entered October 2, 2023, affirmed.
>
> By the Court (Vuono, Henry & Wood, JJ.[5]),
>
> Clerk

Entered:  June 24, 2025.

---

[4] The defendant filed an opposition to the plaintiff's motion to file a supplemental appendix asking us to strike those portions of the supplemental appendix that concern events subsequent to the issuance of the order challenged on appeal. We have not relied upon those portions in deciding this appeal and, therefore, we need take no further action on the motion.

[5] The panelists are listed in order of seniority.