## Alisa M. Keene *vs.* Frank T. Gangi.

No. 01-P-1479.

Middlesex. February 14, 2003. - March 22, 2004.

Present: Perretta, Grasso, & Berry, JJ.

*Abuse Prevention. Protective Order. Words,* "Abuse."

This court concluded that the plaintiff failed to show that the defendant's alleged secret installation of a video camera in the plaintiff's bedroom and the defendant's statements concerning his access to surveillance equipment placed her in fear of imminent serious physical harm for purposes of obtaining a protective order under G. L. c. 209A, § 1, where nothing in the record showed a history of violence, threats, or hostility in their relationship, and where the plaintiff presented no circumstances justifying her delay in seeking a protective order. [669-671]

Complaint for protection from abuse filed in the Newton Division of the District Court Department on July 3, 2001.

The case was heard by *Dyanne J. Klein,* J.

*Harvey A. Silverglate* for the defendant.

*Alisa M. Keene,* pro se, submitted a brief.

Perretta, J. Frank T. Gangi's appeal requires us to consider, once again, the outer limits of the definition of the word "abuse" as defined in G. L. c. 209A, § 1. He argues that the plaintiff (Keene) failed to show by a preponderance of the evidence, see *Frizado* v. *Frizado,* 420 Mass. 592, 597 (1995), that his actions placed her "in fear of imminent serious physical harm." G. L. c. 209A, § 1. We agree and vacate the protective order pursuant to § 7 of the statute.

1. *The evidence.*[1] By way of background, there was evidence

---

[1] Because the judge made no oral or written findings of fact, we recite the evidence in some detail.

to show that Gangi, Keene, and David Doe[2] had been involved in an intertwining relationship, the details of which are not relevant. When that threesome relationship came to an end, Gangi and Keene agreed to remain friends, and Doe remained involved with Keene. However, he was not particularly pleased about her agreement with Gangi.

Keene testified that on the evening of June 22, 2001, a Friday, she became suspicious of a clock that Gangi had given to her. She related that Gangi, upon learning that her clock was broken, told her that he had a clock similar to the one that was broken and which he was not using and that he would install the clock for her. He insisted that the clock be installed on the dresser in her bedroom rather than where she normally placed her clock, on her nightstand. Because of her suspicions, she and Doe opened the clock and discovered that it contained a small video camera.

Both Keene and Doe became very upset and decided that they should leave Keene's apartment. Doe testified that as he and Keene drove away from the apartment, he saw Gangi in his car, a black Jeep Grand Cherokee. Two days later, Doe made a telephone call to Gangi. Doe informed Gangi that he and Keene had discovered the camera and that Gangi was never again to contact him or Keene. Gangi's only response was, "[t]hat's fine."

The next day, June 25, Gangi left a message on Keene's answering machine during which he denied that there was a camera in the clock and stated that if there were, Doe probably put it there. He also said that "if I was going to do something like that, you would never know about it . . . . I'm a lot smarter and I have access to a lot more stuff and I could hire somebody to do it the correct way." He expressed regret that their friendship had ended in a bad way but that Doe had wanted him out of their lives and so he would go. Gangi concluded his message with his wish that Keene "have a good life." Keene and Doe went to the police station and reported the incident regarding the camera that same day, June 25.

---

[2]Because this person has no interest in the controversy or the outcome of this appeal, we employ a pseudonym.

2. *Discussion.* "[P]lacing another in fear of imminent serious physical harm" constitutes "abuse" under G. L. c. 209A, § 1. It is Gangi's argument on appeal that even were he responsible for the incident with the video camera, which he adamantly denies, such conduct does not constitute "abuse" within the meaning of the statute and does not warrant a finding based upon a preponderance of the evidence that his words or conduct reasonably placed Keene in fear of imminent serious physical injury. See *Jordan* v. *Clerk of the Westfield Div. of the Dist. Ct. Dept.*, 425 Mass. 1016, 1017 (1997).

Keene argues that her fear of Gangi was not based solely on the video camera incident. She points to the message Gangi left on her answering machine, the fact that Doe saw Gangi's vehicle as they fled from her apartment, and her testimony to the effect that Gangi had a temper, that she had heard him scream at an acquaintance, that he had access to technological equipment, that he would sometimes jokingly say that he could have someone "taken care of" and, also jokingly, that he had been in her apartment without her permission or knowledge.[3]

Even were we to assume for purposes of decision that Gangi did in fact commit the despicable act of secretly installing a video camera in Keene's bedroom, there is nothing in the record before us that shows a history of violence, threats, or hostility in the relationship between Gangi and Keene. Although Gangi surely disconcerted Keene with his telephone message in which he boasted that his abilities to spy were superior to those of Doe, he did not threaten to do her physical harm.

Statements by Gangi concerning his access to surveillance equipment and Keene's belief that Gangi possessed firearms, but see note 3, *supra*, taken together with the other evidence and the circumstances of the relationship, are insufficient to amount to placing Keene in fear of imminent serious physical harm. Cf. *Jordan* v. *Clerk of the Westfield Div. of the Dist. Ct. Dept.*, 425 Mass. at 1017. Our conclusion is buttressed by

---

[3]Keene also states in her brief that there was evidence to show that Gangi owned firearms. The only support in the record for her assertion is the affidavit she filed at the time she sought the protective order at issue. However, the affidavit shows only that it was her "understanding" that Gangi possessed a "firearms identification card and/or license to carry."

Keene's own testimony that she did not seek a protective order until July 3, 2001, nearly two weeks after her discovery of the video camera and Doe's observation of Gangi as they fled Keene's apartment, and one week after hearing Gangi's recorded telephone message. See *Commonwealth* v. *Jacobsen*, 419 Mass. 269, 273-274 (1995). Cf. *Commonwealth* v. *Perl*, 50 Mass. App. Ct. 445, 449-450 (2000). Although there are many circumstances that can show that a delay in seeking a protective order is understandable rather than attributable to a lack of fear of physical harm, none have here been presented. Rather, Keene testified that her only intent at the time she went to the police on June 25 was to make a record of the incident concerning the video camera.[4]

We are not insensitive to Keene's reactions upon discovering the video camera in her bedroom and hearing Gangi's message on her telephone answering machine. Nor are we unmindful of the apprehension Keene claims to have experienced because of the outrageous invasion of her privacy and Gangi's boastful remarks to her. However, no matter how subjectively real Keene's apprehension might have been, it was unsupported by objective evidence sufficient to show, as required by G. L. c. 209A, § 1, that she was "in fear of imminent serious physical harm."[5] As stated in *Wooldridge* v. *Hickey*, 45 Mass. App. Ct. 637, 639 (1998):

> "Generalized apprehension, nervousness, feeling aggravated or hassled, i.e., psychological distress from vexing but nonphysical intercourse, when there is no threat of imminent serious physical harm, does not rise to the level of fear of imminent serious physical harm. *Larkin* v. *Ayer Div. of the Dist. Court Dept.*, 425 Mass. 1020 (1997). The judge must focus on whether serious physical harm is imminent and should not issue a c. 209A order on the theory that it will do no harm, i.e., 'seems to be a good idea or

---

[4]Keene insisted at the hearing on her complaint that she was in fear at the time of her visit to the police on June 25. However, she acknowledged that although the police then asked whether she wished to obtain a protective order, she declined to do so.

[5]By her own testimony, Keene seemed to concede that her fear lacked a reasonable basis. As put by her, "as irrational as it may sound, I was very scared of what he was capable of doing."

because it will not cause the defendant any real inconvenience.' *Smith* v. *Joyce*, 421 Mass. [520,] 523 n.1 [1995]."

3. *Conclusion.* The order issued pursuant to G. L. c. 209A is vacated. The District Court judge shall cause a direction to be sent, conformably with the provisions of G. L. c. 209A, § 7, third par., for the destruction of all record of the vacated order.

*So ordered.*