The defendant, J.K., appeals from the issuance of an order of protection issued pursuant to G. L. c. 209A. He asserts that the evidence was insufficient to support the order. We affirm.
Background. Because the judge made no oral or written findings of fact, we recite the evidence in some detail. See Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140 n.3 (2006), citing Keene v. Gangi, 60 Mass. App. Ct. 667, 667 n.1 (2004).[2] R.C. met J.K. about one year before the January 25, 2018, hearing in this matter; both were living in Cincinnati, Ohio. They began a dating relationship and discovered, roughly one month later, that R.C. was pregnant. R.C. and J.K. moved to Massachusetts in July, 2017, and R.C. gave birth to a son in October, 2017.
Shortly after moving to Massachusetts, their relationship grew strained. After one argument in November, 2017, R.C. went to her parents' house with the baby. After R.C. and the baby returned, the baby awoke in the night and needed to be changed. R.C. began to change him, and J.K. insisted on helping. By that time J.K. had consumed between six and twelve beers and R.C. told him that she was not comfortable with him changing the baby after he had been drinking. J.K. pushed her aside and changed the baby. While this was the only instance of unwanted physical contact, R.C. testified that J.K. has "really, really bad anger issues," and blames her for "almost every bad thing that happens to him in his life." J.K. asked R.C. to move out several times, which he refused to do, even though she was the only named tenant on the lease.
In January, 2018, the situation deteriorated rapidly. On Friday, January 5, J.K. and R.C. argued once again. J.K. slammed doors, threw pillows, and shouted that he "fucking hated" R.C. as she held their son. J.K. did, however, agree to move out on Sunday, January 7. On Sunday, J.K. picked up most of his things, but left behind several larger items because he didn't have a truck. The two made a plan for him to return the following day, but when R.C. asked J.K. to return his keys to her, he left with a key to her apartment. After leaving, he called her and angrily insisted on keeping the keys. R.C. sought and received permission from her landlord to change the locks, and promptly did so.
The following day, Monday, January 8, J.K. informed R.C. that he was unable to rent a truck to get his things, but would rent one the next day. He visited R.C. and the baby later that day, with R.C.'s permission and her parents present, and told her again that he would not return the keys.
The next day, Tuesday, January 9, J.K. again failed to secure a truck. They agreed that J.K. would return at 5 P.M. the following day, and R.C. called U-Haul to ensure that they would have a truck available.
The next day, Wednesday, January 10, instead of meeting at the agreed-upon time in the evening, J.K. arrived in the morning while R.C. was at work. When J.K. realized that R.C. had changed her locks, he called R.C. eight times, texted her, and had the Wrentham police call her to gain entry to her apartment. The police accompanied J.K. to retrieve his possessions at 5 P.M. R.C. petitioned the court for a protective order the next day.
Discussion. "A person seeking an initial protective order under G. L. c. 209A must show that at the time of the application ... she 'suffers from abuse,' i.e., that ... she has a reasonable fear of imminent serious physical harm produced by the defendant's words or actions, viewed in light of the attendant circumstances." Smith v. Jones, 75 Mass. App. Ct. 540, 544 (2009), quoting Iamele v. Asselin, 444 Mass. 734, 737 (2005). See G. L. c. 209A, §§ 1, 3.
The burden was on R.C. to establish, by a preponderance of the evidence, facts justifying the issuance of the order. See Callahan v. Callahan, 85 Mass. App. Ct. 369, 372 (2014), and cases cited. "In evaluating whether a plaintiff has met her burden, a judge must consider the totality of the circumstances of the parties' relationship." Iamele, supra at 740.
Here, R.C. has met her burden to show that she had a reasonable fear of imminent serious physical harm. She testified that she was in fear of J.K., and that his behavior escalated over time. He slammed doors, threw pillows, and slammed other objects during arguments. J.K. blamed R.C. for his unrelated misfortunes and had outbursts in which he said that he "fucking hated" her in front of the child. See Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140, 146 (2006) (protective order warranted where, along with other abusive behavior, ex-husband stated that ex-wife had "ruined his life" and yelled "obscene verbal abuse" in front of their son). J.K. initially refused to leave her apartment, and then refused to turn over his keys. After arranging a time to pick up his belongings, he arrived at her apartment unannounced, at a different time, and repeatedly texted and called her when he discovered that the locks were changed. Cf. Commonwealth v. Gordon, 407 Mass 340, 349-350 (1990) (obscene "verbal outburst," arriving unannounced at plaintiff's residence, and physically blocking door were factors sufficient to show likelihood of abuse in prosecution for violation of restraining order, where no physical contact was made).[3]
As was the case in Gordon, the defendant's outbursts and uncontrolled anger are harbingers of abuse, which "create a picture of a volatile situation in which the possibility of physical abuse was present." Id. at 350. See, e.g., Ginsberg, supra at 146. When judged by a preponderance of the evidence standard, we cannot say that the judge's factual finding that R.C. was in fear of imminent serious physical harm was unsupported by the evidence, nor can we say that, as a matter of law, her fears were unreasonable.
Order entered January 25, 2018, affirmed.[4]

At the extension hearing, J.K. was represented by counsel, and R.C. was subject to cross-examination. The judge did not make detailed oral or written factual findings, but his questions during the hearing and decision to issue the protective order make it clear that he credited R.C.'s version of events, and rejected J.K.'s conflicting testimony. The facts summarized are those the judge implicitly credited.

Like the wife in Gordon, J.K. was in fear because she didn't know what would come next. She testified that she was "nervous that based on his anger I don't know what would make him tick to get to that point," and that she was afraid because he "shows up at my apartment whenever he pleases" and "[b]ecause if I asked him not to come ... the first time, what's going to stop him?"

The defendant appeals both the ex parte abuse prevention order and the extended abuse prevention order. However, the defendant does not have "the right to relitigate the issuance of the ex parte order itself, because that matter is moot: the ex parte order has been superseded by the order after notice." C.R.S. v. J.M.S., 92 Mass. App. Ct. 561, 565 (2017).