NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-561

J.B.

vs.

M.D.V.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this appeal, the defendant tenant, M.D.V., asks this court to vacate a harassment prevention order issued under G. L. c. 258E.  The order was based on several alleged incidents that arose from a landlord-tenant dispute.  The defendant argues that the plaintiff landlord failed to prove three or more separate incidents of harassment sufficient to warrant the order's issuance or extension.  We agree.[1]

---

[1] The parties entered a joint stipulation to vacate the harassment prevention order.  While parties may stipulate to the dismissal of an appeal, see Mass. R. A. P. 29, as appearing in 481 Mass. 1660 (2019), they cannot, by stipulation, require the appellate court to order destruction of the records of a harassment prevention order under G. L. c. 258E, § 9. Accordingly, we decline to accept the stipulation and instead address the merits.

Background.  In September 2023, the plaintiff, J.B., entered into an agreement to rent the basement apartment of her home to the defendant.  Entrance to the defendant's apartment was through the defendant's home.  The lease terms stated that the defendant would pay a monthly rent of $1,000 and that the plaintiff would pay for most utilities and services.  In November 2023, the plaintiff notified the defendant that a nonnegotiable rent increase of $400 would be implemented in December.  Around the same time, the plaintiff entered the defendant's apartment and took photographs of its condition.  Soon thereafter, the parties had two verbal confrontations in which the defendant "got angry," yelled, and got "in [the plaintiff's] face," placing her in fear for her personal safety.[2]  On December 9, 2022, the defendant sent the plaintiff an e-mail outlining his belief that the lease terms prohibited a unilateral rent increase and requesting that the plaintiff not enter the apartment without providing proper notice.  The parties' dispute culminated in the plaintiff serving the defendant with an eviction notice.

On December 27, 2022, after discovering a surveillance camera in her home, the plaintiff applied for, and was granted,

_____

[2] The plaintiff testified that the first confrontation took place in November 2022.  The plaintiff could not recall the date of the second incident.

2

an ex parte emergency harassment prevention order.  A

Northampton police officer notified the defendant of the order

via telephone and advised him of the order's no contact

provision.  On January 9, 2023, the defendant made his required

rent payment to the plaintiff via an electronic money transfer

application.  On January 10, 2023, after a two-party hearing, a

District Court judge granted a one-year extension of the order.

The judge cited the two instances of verbal confrontation and

the placement of the surveillance camera as separate acts of

harassment.  In addition, the judge cited the January 9 rental

payment as a "clear violation of the [ex parte temporary order]

that was in effect" as a reason to issue the one-year extension.

On February 1, 2023, the defendant filed a timely notice of

appeal, together with a motion to vacate the order.  The judge

denied the motion to vacate, and the defendant timely filed a

second notice of appeal.

Discussion.  In reviewing a civil harassment prevention

order, we consider whether the judge could find, by a

preponderance of the evidence, that the defendant committed

"[three] or more acts of willful and malicious conduct aimed at

a specific person."  Seney v. Morhy, 467 Mass. 58, 60 (2014),

quoting G. L. c. 258E, § 1.  See C.E.R. v. P.C., 91 Mass. App.

Ct. 124, 126 (2017).  We review the judge's factual findings for

clear error.  See id.  "[W]e will not substitute our judgment

for that of the trier of fact.  We do, however, scrutinize without deference the propriety of the legal criteria employed by the trial judge and the manner in which those criteria were applied to the facts."  C.O. v. M.M., 442 Mass. 648, 655 (2004), quoting Commonwealth v. Boucher, 438 Mass. 274, 276 (2002).[3]

To the extent "harassment" is based on speech, the Legislature intentionally crafted the statutory definition to "confine the meaning of harassment to either fighting words or 'true threats.'"  O'Brien v. Borowski, 461 Mass. 415, 425 (2012).  "Fighting words" are "face-to-face personal insults that are so personally abusive that they are plainly likely to provoke a violent reaction and cause a breach of the peace."  Id. at 423.  "True threats" are "direct threats of imminent physical harm" or "words or actions that -- taking into account the context in which they arise -- cause the victim to fear such harm now or in the future."  Id. at 425.  There was no evidence here that the defendant said anything to the plaintiff that amounted to fighting words or true threats.  Although the plaintiff described the defendant's e-mail messages highlighting his intention to pursue his legal remedies as "threatening," sending notices of a future lawsuit or court proceedings "does

---

[3] The case law regarding abuse prevention orders under G. L. c. 209A generally applies to G. L. c. 258E harassment prevention orders.  See A.P. v. M.T., 92 Mass. App. Ct. 156, 161 (2017).

4

not evidence a threat."  Larkin v. Ayer Div. of Dist. Court Dep't, 425 Mass. 1020, 1020 (1997).

Accordingly, we consider whether the defendant's nonverbal conduct toward the plaintiff satisfied the definition of "harassment."  "[A]n essential element of civil harassment is intent."  Seney, 467 Mass. at 63.  Chapter 258E's definition of harassment includes a two-fold intent requirement that comports with the Legislature's goal of confining the meaning of harassment to true threats or fighting words.  See O'Brien, 461 Mass. at 426-427.  First, the plaintiff must show that each act was "committed with the intent to cause fear, intimidation, abuse or damage to property" and second, the act must "in fact cause fear, intimidation, abuse or damage to property."  Id. at 419, quoting G. L. c. 258E, § 1.  "Case law has limited the meaning of 'fear' to 'fear of physical harm or fear of physical damage to property.'"  C.E.R., 91 Mass App. Ct. at 125.  "Abuse" is defined as "attempting to cause or causing physical harm to another or placing another in fear of imminent serious physical harm."  G. L. c. 258E, § 1.  Likewise, "intimidation" requires "placing the victim in fear of bodily harm or death."  O'Brien, 461 Mass. at 425, quoting Virginia v. Black, 538 U.S. 343, 360 (2003).  Thus, to qualify as an act of harassment under c. 258E, the actor's conduct must cause, and intend to cause fear of, either physical harm or damage to property.  See O'Brien, supra.

5

We need not determine whether the judge erred in qualifying the two verbal confrontations, in which the defendant yelled at the plaintiff, leaned in her direction, followed her, and "got in her face," as acts of harassment under G. L. c. 258E, § 1, because the placement of the surveillance camera did not qualify as a third act.[4]  The plaintiff's testimony that the discovery of the camera "absolutely freak[ed her] out" and that she was "petrified" satisfied the second intent element required under c. 258E.  However, the plaintiff did not satisfy her burden of proving that the defendant's placement of the camera, which he denied, "was maliciously intended . . . by the defendant to place the plaintiff in 'fear of physical harm or fear of physical damage to property.'"  A.T. v. C.R., 88 Mass. App. Ct. 532, 535 (2015), quoting O'Brien, 461 Mass. at 427.

Assuming that the defendant "did in fact commit the despicable act of secretly installing a video camera" in the plaintiff's kitchen, "there is nothing in the record before us that shows a history of violence, threats, or hostility in the relationship between" the plaintiff and the defendant.  Keene v.

---

[4] We do not read the judge's findings on the motion to vacate the harassment prevention order as relying on the January 9 electronic rent payment as an act of harassment. While arguably a violation of the ex parte no contact order, the payment carried no threat of physical harm or property damage, and nothing in the record shows that it was accompanied by any threatening message or emoji that would satisfy either intent element.

Gangi, 60 Mass. App. Ct. 667, 669 (2004).  In the context of their heated landlord-tenant dispute, where the defendant had to pass through the plaintiff's home to get to his basement unit, there is no objective proof that the defendant's placement of a camera in her home -- whether hidden or in plain sight -- was intended to cause the plaintiff to fear physical injury or property damage.  See, e.g., F.W.T. v. F.T., 93 Mass. App. Ct. 376, 378-379 (2018) (even in context of ongoing "personal and legal quarrel," defendant's act of flying drones over plaintiff's property did not evidence intent to cause fear, intimidation, abuse, or property damage); C.E.R., 91 Mass. App Ct. at 128 (although installation of video camera aimed at plaintiff's driveway and living room may have caused fear, "there was no evidence that the defendants intended the cameras to do so").  Cf. Keene, supra at 670 (defendant's placement of clandestine video camera in plaintiff's bedroom did not prove reasonable fear of imminent serious physical harm sufficient for issuance of G. L. c. 209A abuse prevention order).

The harassment prevention order entered against the defendant should not have issued and must be vacated and set aside.[5]

---

[5] Because we conclude that the order should not have entered, we need not address whether the motion to vacate was properly denied.

Conclusion.  We remand the case to the District Court to vacate and set aside the harassment prevention order and to order destruction of "all record" of the order as required by G. L. c. 258E, § 9.  See C.E.R., 91 Mass. App Ct. at 132 n.17.

So ordered.

By the Court (Rubin,
Massing & Grant, JJ.[6]),

Paul Little

Clerk

Entered:  January 31, 2025.

---

[6] The panelists are listed in order of seniority.